All the Justices concurring.

THE ST. LOUIS, FORT SCOTT & WICHITA RAILROAD COMPANY v. WALLER CHENAULT, et al.

1. ACTION; *Set-Off.* Where a railroad company sues its former treasurer for moneys alleged to belong to the company, and to have been received by him as treasurer and wrongfully appropriated by him to his own use, and it appears that he appropriated the same in payment of certain claims of his against the railroad company, which claims were founded upon contract, *held*, that the treasurer may in such action have the amount of his claims set off against the claim of the railroad company, so far as his claims are legal and valid and just and equitable.

2. Notes, *Executed by Railroad Company; Purchase at Discount; Collection.* Where a treasurer of a railroad company with his own money and for himself individually purchases promissory notes executed by the railroad company, and at the time of the purchase he is under no obligation to the railroad company to purchase or to pay the same, *held,* that although he purchased them at a discount, still he may collect from the railroad company their full face value.

*Error from Bourbon District Court.*

ACTION by *The Railroad Company* against *Chenault* and another, to recover $11,928.39. Trial by the court at the December Term, 1884, and judgment for defendants. The plaintiff brings the case to this court. The material facts are stated in the opinion.

*Richards & Benton,* and *J. H. Sallee,* for plaintiff in error.
*E. M. Hulett,* and *J. D. McCleverty,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by the St. Louis, Fort Scott & Wichita railroad company against Waller Chenault and the First National bank of Fort Scott, Kansas, to recover $11,928.39. It is admitted that Chenault was the treasurer of the railroad company from March 14, 1882, up to May 27, 1884, with the exception of about one month in November, 1882, and was also a director for the company for a portion of that period of time, and was also president and business manager of the bank, and that the bank as a corporation was the depositary of the funds of the railroad company. It is also admitted that Chenault at one time had in his hands, as treasurer of the railroad company, the said sum of $11,928.39; and that out of this sum he paid to the railroad company, after this suit was commenced, the sum of $6,125, leaving the sum of $5,803.39 still in dispute. To account for this last-mentioned sum, Chenault claims that prior to the commencement of this action he paid to himself out of the company's funds the sum of $2,250, as compensation due him for his services as treasurer of the plaintiff;

$310, due him for traveling expenses, paid by him for the plaintiff; $313.50, due him for exchange purchased for the plaintiff of the bank, and paid for himself; and $2,926.89, due him on three promissory notes executed by the plaintiff to one Robert D. Clifford and owned and held by himself. Upon these disputed claims, and these only, a trial was had before the court without a jury, and the court made a general finding in favor of the defendants and against the plaintiff, and rendered judgment accordingly. The plaintiff brings the case to this court for review.

In one of the plaintiff's briefs it is claimed that the following questions arise:

"1st. Can a treasurer of a corporation (he also being a director) arbitrarily allow himself a salary, fix the amount, adjudge it to be reasonable, and appropriate the company's money in payment thereof without its consent?

"2d. Has an officer of a corporation, such as defendant in error, Chenault, a right to buy up outstanding claims against his corporation, and then arbitrarily pay such claims out of the corporation funds without the consent of the corporation?

"3d. In an action against an officer of a corporation to recover money alleged to have been unlawfully appropriated and converted by him, as in this case, can he offset such claims, and his own wrongful acts, against the corporation's demand for its funds?

"4th. Sustaining the relation Chenault did toward his codefendant in error, bank, being its president and chief executive officer and business manager, is not the bank charged with knowledge of the misappropriation of these funds, and is it not a party to the transaction and liable as joint *tort feasor?*"

In another of the plaintiff's briefs it is claimed that the following questions arise:

"1. Whether Chenault had the legal right whilst treasurer of this company to 'adjudicate,' and audit, and pay his own claims in the manner shown by the record?

"2. If not, and he was therefore liable as claimed, is the bank, of which he was president, liable?

"3. Is Chenault liable to account to his company for the discount of the notes he purchased?"

The plaintiff claims that the foregoing disputed items are not proper subjects of either set-off or counterclaim in this action.

We think that the defendant, Chenault, had no right to adjudicate upon his own claims, or to adjust or audit them, or to pay the same without the consent of the railroad company; but these are not the controlling questions in this case. The real and controlling question is this: Having done all these things with reference to his own claims, (and he had frequently done similar acts before with reference to his own claims and the claims of others, and his acts with reference to these other claims had been ratified and approved by the railroad company,) and having afterward ceased to be the treasurer of the railroad company, and this action having afterward been brought against him by the railroad company for the amounts which he had thus paid to himself or appropriated, can he not now in this action have these claims of his set off as against the claim of the plaintiff, so far as his claims are legal and valid and just and equitable? The plaintiff says not, for the reason, among others, that this action is not founded upon contract within the meaning of § 98 of the civil code, but is founded exclusively upon tort. Now is it true that this action is founded exclusively upon tort, and not upon contract? Chenault held the money sued for as the treasurer of the railroad company; his office or agency was created by contract; his duties thereunder were also created by contract and were regulated by contract; it was his duty under these contract relations to dispose of these moneys as ordered by his principal; and if he did not do so he violated his contract, and at once created a cause of action on the contract against himself and in favor of his principal. Even if the facts stated would also constitute a cause of action in tort, still they also constitute a cause of action on contract, and this is enough to authorize the interposition of a set-off.

We think the case of *Austin v. Rawdon*, 44 N. Y. 63, lends support to the proposition that this is an action founded on contract. Indeed, the plaintiff cannot state his cause of action

without stating a contract; for in order to properly state his cause of action he must state the facts thereof, and when he states the facts thereof he states a contract. In this state all the old forms of action are abolished, and in their stead we have only one form of action called a civil action, and the plaintiff in stating his cause of action must state the real facts thereof as they have actually occurred, and not forms or fictions as was frequently permissible and sometimes required by the common law. Hence, where a plaintiff has a cause of action on contract, he must state the contract, and cannot properly state his cause of action without stating the contract. Also, in this state a cause of action founded upon an implied contract, as well as a cause of action founded upon an express contract, may be the subject of set-off. (*Fanson v. Linsley,* 20 Kas. 235.) And the set-off may be for unliquidated damages and in an action for unliquidated damages. (*Stevens v. Able,* 15 Kas. 584; *Gardner v. Risher,* 35 id. 93; same case, 10 Pac. Rep. 584.) And when cross-demands exist which may be set off against each other, neither party can deprive the other of his right of set-off by an assignment of his demand. (*Leavenson v. Lafontane,* 3 Kas. 523; *Turner v. Crawford,* 14 id. 499; *Gardner v. Risher,* 35 id. 93; same case, 10 Pac. Rep. 584.) And where the holder of a claim which could properly be set off against the claim of another person, but under the circumstances such holder can make his set-off available only by interposing it in an action of replevin, an action founded upon an alleged tort, he may interpose it in such action. (*Gardner v. Risher,* 35 Kas. 93; same case, 10 Pac. Rep. 584.) And even in an action on a constable's bond the constable may set off his' fees due from the plaintiff. (*Sponenbarger v. Lemert,* 23 Kas. 55.) And to allow set-offs to be interposed in cases like the present comes within the spirit of the civil code, which attempts, as far as it is reasonably practicable, to have all controversies between the same parties determined in one action. (*Stevens v. Able,* 15 Kas. 587.)

The following cases also tend to support the view that set-

off may be allowed in cases of this kind: *United States v. McDaniel*, 32 U. S. 1; *United States v. Ripley*, 32 id. 18; *Gratiot v. United States*, 40 id. 336, 370, *et seq.*; *Donelson v. Coleraine*, 45 Mass. 430; *The State v. Franklin Bank*, 10 Ohio, 92; *East Anglain Rys. Co.*, 2 Eng. Law and Eq. 331.

We do not think that the authorities cited by counsel for the railroad company are applicable under our statutes. The case of *Russell v. First Presbyterian Church*, 65 Pa. St. 9, is the principal case relied on by the railroad company. It must also be remembered that in this case the funds placed in the hands of Chenault were not set apart by the railroad company for the payment of any particular debts or claims. These funds were intended for the payment of debts and claims in general, held against the railroad company, and just such debts and claims as Chenault held or holds. This fact, as well as our statutes, distinguishes this case from the cases principally relied on by counsel for the railroad company.

1. Action; set-off.     We think the decision of the court below upon the question of set-off is correct, and that Chenault may in this action have his claims against the railroad company set off against their claim.

As this case comes to us, it must be admitted that all the claims of Chenault against the railroad company are legal and valid and just and equitable, with the exception of his claim upon the above-mentioned promissory notes; and it must also be admitted that his claim upon these notes is legal and valid and just and equitable up to the amount which he paid for them, which was much less than their face value; but is not his claim good for the full amount of the face value of the notes? We shall now proceed to consider this question. There were three of these notes. The first was due January 5, 1881; the next was due January 5, 1882; and the last was due January 5, 1883. Chenault purchased them a little before the time when the last one became due, and with his own money, but at a large discount. There is no showing that he was under any obligation to the railroad company to purchase them, or that he had any funds of the railroad com-

pany in his hands with which he could have purchased them or paid them; and probably he had not. However, on May 20, 1884, about one year and four months after the purchase, he had funds in his hands belonging to the railroad company, and with such funds he then paid them. They were payable originally to a fictitious payee, but still they were *bona fide* obligations of the railroad company for value and to the extent of their face value, and were valid in the hands of any *bona fide* purchaser or holder thereof. (*Kohn v. Watkins*, 26 Kas. 691, 698, *et seq.*) And although Chenault knew that they were executed to a fictitious payee, still he was a *bona fide* purchaser for value, and purchased them from the real owner and holder thereof, and obtained whatever right thereto and to collect the same that the original owner and holder had. But we need not pursue this subject further, for no question is raised upon the fact that the notes were executed to a fictitious payee. The real question is, whether Chenault is entitled to their full face value or only to the amount which he actually paid for them. Mr. Morawetz, in his work on Private Corporations, § 521, uses the following language:

"A director or other agent of a corporation may . . . purchase property, and afterward sell it to the corporation at an advance, provided it was not his duty when he made the purchase to purchase on behalf of the company. So an agent of a corporation may purchase claims against the company at a discount and enforce them in full, if he was not under obligation to make the purchase on behalf of the corporation."

And he cites the following authorities in support thereof: *Parker v. Nickerson*, 137 Mass. 488, 497; *Bradley v. Williams & Co.*, 3 Hughes, (U. S. C. C.,) 26; *Inglehart v. Thousand Islands Hotel Co.*, 32 Hun, 377. These authorities sustain the text of the author; and we think they fairly state the law. This case does not come within the rule governing principals and agents, where the agent is under obligation to purchase for the principal, or to pay the debts or claims against his principal, or where the agent uses the funds of his principal in making

the purchase or the payment; but it comes within the rule above stated by Mr. Morawetz. As above stated, and under the facts of this case, Chenault was under no obligation to the railroad company to purchase or to pay the said promissory notes. And he did not use the company's funds in purchasing the same, and in all probability he could not have done so, for under the testimony and the findings of the trial court he probably and presumably at the time did not have any of the company's funds, but the company in fact owed him.

The judgment of the court below will be affirmed.

All the Justices concurring.