HIRAM F INGLEHART et al., Respondents, *v.* THE THOUSAND ISLAND HOTEL COMPANY et al., Appellants.

In August, 1873, defendant T. filed a mechanic's lien against the property of defendant, the T. I. H. Co., and in August, 1875, in an action to foreclose the same, recovered judgment for the amount claimed, and directing a sale of the property to satisfy the same. K. sold his judgment for $1,412.23; the company appealed from the judgment. After argument of the appeal, and pending the decision, an agreement was made between the assignees of the judgment and O. G. S., the president and manager of the company, who in the agreement represented defendant S., although the agreement was, in fact, for his benefit, to the effect that said assignees should transfer the judgment to S., upon payment of $2,400; that a judgment of affirmance on appeal should be entered, the premises sold, the said assignees to bid the amount of the judgment, take a deed of the premises and convey to S, upon his payment of the amount agreed upon for the transfer. As part of the agreement, a stipulation was made by the parties to the foreclosure suit that the appeal should be affirmed. On the same day the General Term rendered a decision reversing the judgment. On the next day judgment of affirmance was entered on said stipulation. The premises were sold under the judgment of foreclosure and bid in by the said assignee for $4,732.09, the amount of the judgment, which was the full value of the property, and upon payment of the sum agreed upon the property was, at the request of S., conveyed by the purchasers to the wife of O. G. S. No order of reversal was ever entered. In an action by judgment-creditors of the company to set aside the judgment of affirmance, the sale and the sheriff's deed of the property, and to have their judgment declared a lien on the premises, or for an adjudication giving them the right to redeem, the trial court found substantially the above facts. It was not questioned but that K.'s claim was an honest one for its full amount, and the defense to the foreclosure was on technical grounds. *Held*, that the facts did not necessarily establish fraud as matter of law.

The referee refused to find fraud, either as matter of fact or of law. The General Term reversed the judgment, but in its order did not declare the reversal was upon the facts. *Held*, that this court must assume the reversal was for error in law (Code Civ. Pro. §§ 1337, 1338); and as no such error was shown the order could not be sustained.

The abandonment by a debtor of an effort to deprive an honest debtor of the whole or some portion of his debt, by the interposition of a technical defense, is not fraudulent as to other creditors.

Also, *held*, the fact that O. G. S. was president and manager of the company did not render his action voidable at the suit of its creditors; that he owed no duty to them to refuse or prevent the proposed affirm-

ance of the judgment of foreclosure, or to continue an unjust litigation for their benefit; that his duty was simply to pay the just debts of the company out of its property, which was what the agreement did.

(Argued April 19, 1888; decided June 5, 1888.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, made April 20, 1886, which reversed a judgment in favor of defendants, entered upon the report of a referee, and granted a new trial.

This action was brought by plaintiffs, as judgment-creditors of defendant, the Thousand Island Hotel Company, to set aside an order of affirmance of a judgment, in an action to enforce a mechanic's lien upon the real estate of said company, the judgment entered on said order, a sale under the judgment and the sheriff's deed, to restore the lien of plaintiffs' judgment and to have it adjudicated that said real estate is subject to said lien or that plaintiffs have a right to redeem.

The referee found substantially the following facts.

On the 27th day of January, 1874, the plaintiffs commenced an action against the defendant, the Thousand Island Hotel Company, and on the 9th day of April, 1875, recovered a judgment therein against the said defendant for $1,370.11, on which execution was duly issued and returned unsatisfied.

On the 25th day of April, 1873, Orren G. Staples, Helen M. Staples, his wife, Copley A. Nott and Cora A. Nott, his wife, as corporators, organized the corporation defendant. The number of trustees of said corporation, as fixed by the certificate, is four, and the incorporators were made the trustees for the first year. By deed dated May 1, 1873, the said Orren G. Staples, Helen M. Staples, his wife, Copley A. Nott and Cora A. Nott, his wife, conveyed the lands described in the complaint in this action to the said company. On the 7th of August, 1873, one Alfred Tiley filed in the clerk's office of Jefferson county a mechanic's lien against the said the Thousand Island Hotel Company, thereby claiming a lien on the said lands to the amount of $3,577.08, for work and labor performed and materials furnished in the erection and com-

pletion of a building on said premises between the 22d day of March, 1873, and the 19th day of July, 1873. On the 19th of March, 1874, the said Tiley commenced proceedings to enforce said lien against said Staples and Nott and their wives, the Thousand Island Hotel Company and others. The bill of particulars in said proceedings shows that a portion of the work done and material furnished, for which said lien was filed, was done and furnished prior to the conveyance of said premises to the company, and a still larger proportion more than sixty days before the filing of said lien. The only defendants in those proceedings, who interposed defenses, were Orren G. Staples, Copley A. Nott and the Thousand Island Hotel Company. The issues were referred to a referee who made his report in favor of the claimant, on which judgment of foreclosure and sale was duly entered August 11, 1875, for $3,936.74 damages and $199.83 costs. No notice of the pendency of said proceedings was filed in the clerk's office of Jefferson county, except the claimant's "notice, bill of particulars on foreclosure of mechanic's lien," which was filed March 19, 1874. From the judgment the defendant, the Thousand Island Hotel Company, appealed to the General Term. The case was submitted to the General Term in October, 1876, and on the 29th day of December, 1876, the said General Term rendered a decision in the case, whereby said judgment was reversed, and a new trial granted; the order of reversal was never entered. Pending said appeal, on the 27th day of November, 1876, Tiley, by the procurement of Bradford Kennedy, transferred the judgment so obtained by him, and said claim of lien to the defendants Bradford Kennedy, Ross R. Spaulding and Dennis Kennedy, who are copartners under the firm name of Kennedy, Spaulding & Co., for the consideration of $1,412.23. After the assignment Orren G. Staples, who, at the time, was president of the board of trustees of the Thousand Island Hotel Company and its general manager, negotiated with Bradford Kennedy in reference to some disposition of the matter, which resulted in a proposition by Kennedy,

Spaulding & Co. to take $2,400 for the judgment so assigned to them. After some negotiation and consultation with the counsel of the Thousand Island Hotel Company, who was conducting the appeal, they executed an agreement on the 29th of December, 1876, wherein, after giving the title of said lien proceedings and stating that the attorneys for the parties had stipulated that the judgment then on appeal to the General Term, be affirmed, and that the plaintiff therein had assigned said judgment to Kennedy, Spaulding & Co., and that Charles F. Staples was desirous of purchasing the same ; it was stated that, in consideration of said purchase, the said Kennedy, Spaulding & Co. agreed with said Charles F. Staples to assign to him said judgment and decree and all costs, including costs of appeal to the General Term, such assignment to be made to him at his request. He to pay therefor $2,400, with interest from date, and also to pay the cost of the appeal to the General Term as taxed, with interest from the time of the judgment of affirmance. Kennedy, Spaulding & Co. further agreed to advertise and sell the property described in the decree as soon as possible after judgment of affirmance was entered, and at the sale to bid an amount sufficient to cover the judgment as affirmed, besides the costs and expenses of the sale, and, if the premises were sold to them on such bid, to take the deed thereof and convey the same to Charles F. Staples in case he made prompt payment of the sum above specified. If the premises sold for more than said judgment and costs, the proceeds, after deducting any balance remaining unpaid of the $2,400 interest and costs, to belong to Staples and to be paid to him by the person making the sale. Staples was to have possession of the premises until default in the stipulated payments, it being understood and agreed that the arrangement was made at the request of said Staples, who was to have no rights under it if he permitted any breach in the condition of payment, as such breach was to work a forfeiture of all rights acquired by previous performance. The

assignment of the judgment was not to be made until full
performance. The agreement further provided that such bid
and sale should be made subject to all prior liens on said
premises. This agreement was executed in the name of
Charles F. Staples. At the same time, and as a part of the
same agreement by direction of said Orren G. Staples and
Bradford Kennedy, a stipulation was made in the action to
enforce the Tiley lien, and signed by the attorneys for the
parties, respectively, to the effect that the appeal then pend-
ing should be affirmed, and that an order of affirmance might
be entered accordingly. On such stipulation a judgment was
entered on the 30th day of December, 1876, affirming the judg-
ment appealed from. At the time the stipulation and agree-
ment were made, and at the time said judgment of affirmance
was entered upon said stipulation, none of the parties or the
attorneys to said Tiley suit, or to this suit, knew of the decision
of the General Term reversing said Tiley judgment. In
pursuance of said judgment the said real estate was, on the
13th of March, 1877, offered for sale by the sheriff of Jefferson
county, at which time the plaintiffs in this action attended and
by their counsel announced to those present that the judg-
ment under which the sheriff was proceeding had been
reversed and that any sale thereunder would be irregular and
void. Notwithstanding such announcement the sheriff pro-
ceeded with the sale and sold the property to the defendants,
Bradford Kennedy, Ross R. Spaulding and Dennis Kennedy,
for the sum of $4,732.69, they being the highest bidders
therefor, and that being the highest sum bid for the same,
that being the sum then due on the judgment. The
sheriff's report of sale was duly filed March 26, 1877, and
the same was afterwards duly confirmed. The premises so
sold were worth, at the time of sale, the sum for which
they were sold. The premises were conveyed by the sheriff
to the purchasers in pursuance of said sale. On the 26th
of October, 1877, the interest of Charles F. Staples in said
contract with Kennedy, Spaulding & Co. was assigned to the
defendant Helen M. Staples, the wife of said Orren G. Staples,

which said assignment was made without any consideration paid by said Helen M. Staples, and without any negotiations with Charles F. Staples by her in regard thereto. Such assignment, and the compromise with Kennedy, Spaulding & Co., were made for the benefit of said Orren G. Staples, who did all the business in connection with these various transactions. Since the commencement of this action, and by deed dated June 27, 1882, Kennedy, Spaulding & Co. conveyed the said premises to the said Helen M. Staples at the request of Charles F. Staples. The conveyance so made was for the benefit of said Orren G. Staples.

The referee found, as conclusions of law, that the agreement between Kennedy, Spaulding & Co. and the Thousand Island Hotel Company for the affirmance of the Tiley judgment was legal and valid, notwithstanding the subsequent reversal of that judgment; that the judgment of affirmance entered on the stipulation of the attorneys in that action was a legal and valid judgment; that the defendant, the Thousand Island Hotel Company, was under no legal obligation to prosecute said appeal for the benefit of its creditors, and had the right to withdraw the same at any time; that the sale and conveyance upon the judgment thus affirmed, and in pursuance of the agreement, were legal and valid; that plaintiffs in this action are bound by the Tiley judgment and the sale thereunder, the same as though they had been parties to that action, that they have no right of redemption, and the lien of their judgment upon the property in question was extinguished by the sale.

Judgment was directed dismissing the complaint.

*Denis O'Brien* for appellants. The judgment and order made by the General Term are reviewable upon appeal in this court. (Code Pro. § 11 subd. 2; Code Civ. Pro. §§ 190, 191, 194; *Conger* v. *Conger*, 77 N. Y. 432; *Rust* v. *Hauslet*, 69 id. 485; 76 id. 614; *S. C.*, 8 Abb. N. C. 149; *Roe* v. *Boyle*, 81 N. Y. 305; *Jones* v. *Jones*, 1 id. 35; *Williams* v. *W. U. Tel. Co.*, 93 id. 163, 194; *People* v. *Denison*, 8 Abb. N. C.

145.) The reversal at General Term of the judgment appealed from must be conclusively presumed upon this appeal to have been upon questions of law only, and this court will only examine the questions of law. (Code Pro. §§ 268, 272, 348; *Wright* v. *Hunter*, 46 N. Y. 410; Code Civ. Pro. §§ 1337, 1338; *Baldwin* v. *Van Dusen*, 37 N. Y. 487; *Van Blarin* v. *Broadway Bank*, 5 Trans. App. 136; *East River Bank* v. *Kennedy*, 4 Keyes, 279, 286; *Meyer* v. *Beach*, 79 N. Y. 409, 411; *Van Tassel* v. *Wood*, 76 id. 614; *Van Wyck* v. *Walters*, 81 id. 352; *Davis* v. *Leopold*, 87 id. 620; *Goodwin* v. *Conklin*, 85 id. 21; *Rider Raft Co.* v. *Roach*, 97 id. 378; *Shaw* v. *L. E. R. R. Co.*, 20 Week. Dig. 136; *Ward* v. *Craig*, 87 N. Y. 550; *Reitz* v. *Reitz*, 80 id. 541; *Kane* v. *Cortesy*, 100 id. 132; *Everson* v. *City of Syracuse*, id. 584; *Suebley* v. *Conner*, 78 id. 218; *Downing* v. *Kelly*, 48 id. 433; *Kirkland* v. *Leary*, 50 id. 679.) The judgment in the Tiley case was never legally reversed, no order having been entered in Jefferson county, until this was done the decision was of no effect. (32 Hun, 380.) The judgment of affirmance and sale being valid, the referee was correct in his conclusions that the plaintiffs were bound by the same, and the lien of their judgment extinguished. (*Randolph* v. *Leary*, 3 E. D. Smith, 637; *Smith* v. *Corey*, 3 id. 642; *Kaylor* v. *O'Connor*, 1 id. 679; *Edward* v. *Dorrickson*, 28 N. J. 62; *Syndon* v. *Holden*, 11 Abb. Pr. [N. S.] 329, note; *Fuller* v. *Scribner*, 76 N. Y. 190.) Fraud is never to be presumed, but must be proven. The burden is always upon the party alleging fraud to establish that fact. (*Ward* v. *Center*, 3 John. 281; *Jaeger* v. *Kelly*, 52 N. Y. 274; *Morris* v. *Talcott*, 96 id. 107; *Henry* v. *Henry*, 8 Barb. 588; *Taylor* v. *Fleet*, 4 id. 95; *Sullivan* v. *Warren*, 43 How. Pr. 188, 192; *Loeschig* v. *Hatfield*, 5 Robt. 26; *Woodworth* v. *Sweet*, 51 N. Y. 8; *Townsend* v. *Stearns*, 32 id. 209; *Dudley* v. *Scranton*, 57 id. 424; *Solomon* v. *Orser*, 5 Duer, 511; *Nelson* v. *Luling*, 4 J. & S. 544, 551; *S. C.*, affirmed 62 N. Y. 645; *Jackson* v. *King*, 4 Cow. 207; *Star* v. *Peck*, 1 Hill, 270; *Miller* v. *Barber*, 66 N. Y. 559; *Harpending* v. *Munson*, 91 id. 650.) It is only in the absence of all evidence to support

the findings that it becomes a ruling upon a question of law, and reviewable in this court. (Code Civ. Pro. § 993; *Kane* v. *Cortesy,* 100 N. Y. 132; *Meyer* v. *Beach,* 79 id. 409, 411; *Reitz* v. *Reitz,* 80 id. 541.) As the transaction was free from fraud, and the judgment of affirmance was legal and valid, it made the original judgment just as valid and effectual as if no appeal had ever been taken. Henceforth, Staples could purchase the judgment for any sum he pleased, and enforce it for the full amount. (*Twin Lick Oil Co.* v. *Marbury,* 91 U. S. 588; *Duncombe* v. *N. Y. H. & N. R. R. Co.,* 88 N. Y. 1; *S. C.,* 84 id 190; *De Boise* v. *Sanford,* 1 Hoff. Ch. 192; *Hoyle* v. *Plattsburg & Montreal R. R. Co.,* 54 N. Y. 314, 328, 329, 334; *Ten Eyck* v. *Craig,* 2 Hun, 452, 453; *Clark* v. *Flint Pere Marquette R. R. Co.,* 5 id. 556; *Inglehart* v. *Thousand Island Hotel Co.,* 32 id. 377, 382, 383; *Harpending* v. *Munson,* 91 N. Y. 650; *Barnes* v. *Brown,* 80 id. 528; *Rinsley* v. *Indianapolis B. & W. R. R. Co.,* 62 id. 240; *Dodge* v. *Stevens,* 94 id. 209; *Jackson* v. *Van Dalfsen,* 5 Johns. 43; *Harrington* v. *Erie County Savings Bank,* 101 N. Y. 257; *Jackson* v. *Walsh,* 14 Johns. 409; *Wilson* v. *Troup,* 2 Cow. 238; *Davoue* v. *Fanning,* 2 Johns. Ch. 252.)

*Bradley Winslow* for respondents. As trustee and manager, Orren G. Staples, with respect to the property of the corporation, acted in a fiduciary capacity, and he was legally and morally obligated to act in the interest of the stockholders and creditors of the corporation, and had no right to advance his own private interests to their detriment, or in anyway exceed his just authority. (*Hoyle* v. *P. & M. R. R. Co.,* 54 N. Y. 314; *Cumberland C. & I. Co.* v. *Sherman,* 30 Barb. 553; *Bennet* v. *Austin,* 81 N. Y. 308; *Fulton* v. *Whitney,* 66 id. 548; *Lytle* v. *Beveridge,* 58 id. 592–606; *Munson* v. *Syracuse, Geneva & Corning R. R. Co.,* 103 id. 58; *Barnes* v. *Brown,* 80 id. 527–535; *Slade* v. *Van Vechten,* 11 Paige, 21; *Torrey* v. *Bank of Orleans,* 9 id. 648, 663; *Twin Lick Oil Co.* v. *Marbury,* 91 U. S. 587, 588.) The assets of the corporation in the hands of its officers constituted a trust fund to

be honestly applied to the discharge of the legal debts of the corporation. (Story's Eq. § 1252; Pomeroy's Eq. § 1046; *Hastings* v. *Drew*, 76 N. Y. 587; *Third ·Nat. Bank of Buffalo* v. *Elliot*, 42 Hun, 121–128.) After the submission of the case on appeal to the General Term, the parties lost control of it. It is similar to the submission at circuit of a case to a jury when the plaintiff cannot afterwards submit to a nonsuit. (Code of Civ. Pro. § 1182, Rule 30.) The judgment entered in the suit of *Tiley* v. *Thousand Island Hotel Company et al.* was not authorized by the papers on which it was entered, and is, therefore, invalid. (*Tiley* v. *Thousand Island Hotel Co.*, 9 Hun, 424.)

FINCH, J. There is a difficulty in maintaining the decision of the General Term which we are unable to overcome. The foundation of the plaintiff's right of action, treated as a creditor's bill, is fraud. If that be absent, he has no ground of complaint. The trial court did not assert its existence, and when requested to do so, first as matter of fact and next as matter of law, refused the request as to each. The General Term reversed the judgment, but since its order does not declare that such reversal was upon the facts, we must assume that it was for error in law. (Code Civil Pro., §§ 1337, 1338; *Kane* v. *Cortesy*, 100 N. Y. 132.) We cannot go to the opinion to ascertain. (*Van Tassel* v. *Wood*, 76 N. Y. 614.) We are thus left to inquire what was the error of law involved in the referee's decision.

The respondent first claims that, upon the facts found, the purchase of the property by Staples was necessarily and inevitably with a fraudulent intent, and no other inference can possibly be drawn, whereby there followed the conclusion of fraud in law, which the referee, although requested, refused to find. The pivot on which the whole transaction swings is the affirmance of the Tiley judgment by stipulation. If that had not been done the sale which did occur would not have taken place. If that affirmance *could* have been honest, fair, done in good faith and without fraudulent intent, then the

question whether it *was* so done is a question of fact, and not of law. It needs only a study of the situation to discover that the stipulation to affirm the judgment was not necessarily and inevitably fraudulent. Tiley had an honest debt for its full amount. No answer to it as a debt is pretended. He was entitled to his pay up to the full amount. He sought to enforce it as a lien on the hotel property and brought his action for that purpose. The hotel company defended upon technical grounds. These were, at least, debatable and certainly not meritorious. Tiley succeeded and obtained judgment and the company appealed, all the other parties submitting to the decision. Before the decision of the General Term the company stipulated to abandon its appeal and consented to an affirmance of the judgment. Beyond any question it *may* have acted honestly in so doing, and Staples might, without fraud, advise and urge that action. It is not fraudulent conduct to abandon an effort to deprive an honest creditor of the whole or some portion of his debt. Nor is one creditor hindered or delayed by ending an effort to hinder or delay another. At this time Tiley had sold his debt and his lien to Kennedy, Spaulding & Co., without the knowledge of Staples. The lienor, oppressed by the delay, or fearful of the dangers of the contest, sold at a sacrifice. The firm had a right to buy, and buy cheap, for they bought a law suit with its contingencies. They took Tiley's place and had all his rights. They were entitled to every dollar of his debt, and defrauded nobody if they got it. Standing in that attitude they enforce their judgment by a public sale after due notice. Other creditors were at liberty to bid, and did bid. But it is said a fraud was practiced upon them by failing to disclose the stipulation of affirmance. The facts tend to dispel that idea. The judgment on the stipulation was entered on the 30th day of December, 1876, and became on that day a matter of record open to every observation. The sale did not take place until the thirteenth of the next March. For almost three months public notice by the record had been given of the fact of affirmance. There is no finding and no request to find that the plaintiffs were ignorant of this

fact thus publicly disclosed, and which it was their duty to know. The fact of the reversal on the 29th day of December, 1876, was known to plaintiffs at the sale, for they declared the fact. If they had examined the records, as we may presume that they did, they knew that no order of reversal had been entered, and they saw that the assignees of Tiley were enforcing the judgment as affirmed. Before the sale, therefore, they knew all the facts and were in no manner blinded or deceived. They took no steps to open or set aside the sale, or to set aside the judgment of affirmance by coming in as parties and seeking to litigate the Tiley claim, but two years later begin this action seeking to restore the lien of their judgment upon the property. The purchasers bid up to the full amount of the Tiley judgment, and that amount was the full value of the property, for while it is found that such was the value there is not a word of proof or even a claim that it was worth a single dollar more. What happened then was this only: the assignees of Tiley took the property at its fair and full value in discharge of an honest debt. Assuredly there is no fraud in the result, for that is, that one creditor has collected his debt by taking the debtor's property at a full and fair valuation and by force of a preference to which he was lawfully entitled. These considerations show, not that there may not have been a fraudulent intent, but that the question is one of fact, of conflicting inferences, and not one in which a conclusion of fraud is inevitably to be drawn as a conclusion of law. For, if the title of Kennedy, Spaulding & Co. was good, they were at liberty to sell it to whom they pleased and at such price as they could obtain and chose to accept, and no charge of fraud could be sustained. I do not see, therefore, how it is possible to sustain the reversal of the General Term upon the ground that the transaction was fraudulent in law. If Tiley had remained owner of the judgment, and it had been affirmed by stipulation, and he had bid the property in for the full amount of his judgment, which was its fair value, and then sold it at half-price to Staples, who would have been wronged, what creditor would have been defrauded? Does it alter the case

that not he, but his assignee, did exactly that? If on a trial before a jury upon an issue of intent to defraud creditors these facts had all been proven, and the defendant asked to go to the jury upon the question, and the plaintiff asked that a verdict in his favor be ordered by the court, I think it very clear that the last request could not have been properly granted, and the question would have been one for the jury. That supposition tests the action of the General Term. The referee refused to find fraud, even as a fact, upon the conflict of inferences. The General Term might have reversed on the facts because they were of a contrary opinion, but did not do so, and stand upon the ground that there was fraud in law, and the facts admit of no other possible inference. In that we think they erred. The legislature has been averse to the rule, at one time adopted by the courts, that fraud in such cases was a question of law, and sought to end the controversy, which had raged almost bitterly, by explicitly enacting that in such cases the question of fraud should be one of fact. And while it may, nevertheless, be true that facts may be proven from which the inference of fraud is so necessary and inevitable that a verdict to the contrary would not be endured, and so a fraud as matter of law be established, yet this is not such a case and cannot properly be so treated.

But there is another aspect of the case presented by the facts which depends upon the relation in which Staples stood to the hotel corporation as one of its directors and its general manager, and which steers clear of the question of fraud. It is claimed that, by reason of that relation, his action was voidable at the suit of the corporation or its creditors, and he may be compelled to disgorge the profit which he has unlawfully made. Going back to the moment of time when Staples agreed that the judgment should be affirmed, it is pointed out that his duty to the corporation as manager and director was put in collision with his interest as an individual; that his duty was not to consent to an affirmance of the judgment while his personal interest was the other way; that his duty

was on the sale to get the highest price possible for the prop-
erty of the company while his interest was the reverse; and
that a court of equity will not stop to inquire in such a case
whether the trustee has acted honestly, but will never endure
that he act at all under a temptation destructive of his duty,
and will set his action aside or compel him to account for any
profits he may have made.

But it is to be observed that this rule has its appropriate
application where the trustee deals with his company, and so
may be said to be acting on both sides or dealing with himself.
In the present case Staples was not dealing with the corpora-
tion. He bought nothing of that and made no contract with
it, but dealt wholly with third persons to whom he owed no
duty, and with whom he was at perfect liberty to make the
best bargain possible. He touched the corporation but at a
single point, and that was in the stipulation of affirmance. It
may be said of that action that his duty and his interest were,
as it respects such stipulation, in collision. But the act was
not his. It was the act of the corporation itself executed by
its attorney in the action. The corporation assented. It does
not complain. Apparently all four of the stockholders con-
curred, and no wrong was done them. Nobody complains or
can complain unless it be the creditors. But Staples owed no
duty to them to refuse or prevent the proposed affirmance or
continue an unjust litigation for their benefit. He owed them
the duty of paying the just debts of the company out of its
property. That is what he was doing. He was arranging to
satisfy the Tiley debt which was a prior lien. He owed them
the duty of not wasting the corporate property. He was stop-
ping the waste of an unjust defense and an expensive litigation.
If it be said that part of Tiley's claim was not a debt of the
corporation and the trustee was bound to resist it, the answer
is we do not know that and cannot try that question over again.
The four persons who owed such portion were the same four
who became the corporation, and may have assumed in their
corporate character, by agreement or by conduct, the duty of
payment resting on them as individuals, or the lien may have

clung to the building despite the change of title. But they did defend and were beaten. It is true there was a reversal by the General Term; but we do not know even the ground of that reversal, except as recited in the opinion below and by reference to the reports of the court.

Assuming the reversal to have been as stated, it is a true, if somewhat trite, observation that it is easy after the battle to tell how it should have been fought. Nobody knew beforehand that a reversal would be secured; and nobody knows now what the contingency of a new trial or an appeal to the court of last resort would have involved. Courts and judges sometimes differ, and it is not always easy to be sure who is right and who is wrong. The creditors of the corporation had no equity to require that the directors should persist in their appeal, and no shadow of wrong was done to them when the corporation defendant submitted to the judgment of the court already rendered and allowed an honest creditor to collect an honest debt. And so we discover no dealing between Staples and the company; no contract of his with the corporate body of which he was a member; no act of his own which the company could avoid as in fraud of his duty to it, but simply an act of the corporation itself, performed not by Staples but by its own chosen and authorized attorney, which it might equally have done if Staples had already received an actual assignment of the judgment; an act in which his participation as a stockholder assenting to it may be the subject of scrutiny and the basis for alleging an actual fraudulent intent, but involves no contract or dealing between himself and the company, or is voidable as such.

It is further contended that the sale on the Tiley judgment did not cut off the plaintiffs' judgment, because there was no *lis pendens* and they were not made parties to the foreclosure. If that be true, the intervention of equity was needless, and no basis for this action was established. The plaintiffs in that event have their lien and may enforce it. This suit assumes that it has been lost and asks to have it restored.

The order of the General Term should be reversed, and judgment on the report of the referee affirmed, with costs.

All concur.

Order reversed.