MORRIS *v.* IMPERIAL CAP CO.

Partnership Associations — Liquidation — Purchase of Outstanding Claims by Chairman.

> A partnership association determined to go into liquidation, and three liquidating trustees were appointed under 2 Comp. Laws, § 6087. They procured an order of the court authorizing them to manufacture the stock on hand, and employed the chairman of the association as superintendent. While the trustees were thus acting under the authority of the court, the chairman purchased outstanding claims against the association. *Held,* that his relation to the association was not such as to preclude him from purchasing them for his own benefit.

Appeal from Wayne; Hosmer, J. Submitted October 21, 1903. (Docket No. 50.) Decided January 26, 1904.

Bill by Edmund A. Morris against the Imperial Cap Company, Limited, James McKnight, Adolphus Fixel, and others, to enjoin the payment of certain claims against defendant company. From a decree dismissing the bill, complainant appeals. Affirmed.

*Graves, Hatch & Millis,* for complainant.

*William E. Henze,* for defendants McKnight and Fixel.

Montgomery, J. The Imperial Cap Company, Limited, was, prior to February 10, 1902, engaged in manufacturing. The complainant was a stockholder. The defendant James McKnight was also a stockholder and chairman. The company, having met with a fire loss, determined on the date named to go into liquidation. Thereupon three liquidating trustees were appointed under the statute (2 Comp. Laws, § 6087). The liquidating trustees procured an order from the circuit court of Wayne

county authorizing them to manufacture the stock on hand, and to hire the necessary employés for that purpose. Defendant James McKnight was employed to prosecute this work for the trustees. As testified by one of the trustees:

" He was engaged as superintendent to manufacture the salvage. He was not employed as our financial man. He was not our adviser as regards settlements of the debts of the company. The accounts were paid by check signed by two trustees."

Mr. McKnight also held a power of attorney to represent complainant at meetings of stockholders.

While the trustees were so in control of the business, McKnight and his codefendant Fixel became the purchasers of certain claims against the Imperial Cap Company, which they bought at a substantial discount from the face value. Complainant, having succeeded to the rights of the Imperial Cap Company, files this bill asking to have it determined that the relations of McKnight to the company were such that he should not be permitted to purchase claims against the company on his own account, but should be decreed to hold the claims in the interest of the corporation on being reimbursed his advancements. In support of this contention it is claimed that the functions of the liquidating trustees under the terms of the statute are confined to the winding up of the concern and distributing the net assets among the members of the association after the association has itself paid its debts, and from this it is argued that the duties of McKnight as chairman still continued.

The answer to this contention, as it seems to us, is that all parties to this proceeding have acquiesced in a different interpretation of the statute and in quite a different line of action than that indicated. There can be no doubt that all concerned surrendered the management of this business into the hands of liquidating trustees. Not only this, but the trustees acted under the authority of the court. No one appears to have doubted, nor is it now

denied, that *in fact* the control of this business had passed into the hands of the trustees. The question presented is whether, under these circumstances, the rule of technical morality precludes the defendant McKnight from purchasing claims against the company.

It is undoubtedly true that an officer of a corporation who is charged with the duty of making provision for the payment of its debts cannot, in neglect of this duty, become a purchaser of its outstanding obligations at a discount, and collect the full face from his principal. It is stated that it is a fraud on the corporation or corporate creditors for the directors to buy up at a discount the outstanding obligations of the corporation, and compel it to pay them at the full face value. 2 Cook, Corp. § 660. But a director may buy bonds of the corporation at a discount, and enforce them at par, where there are no special equities against such a purchase, and no present duty in regard to them from him as a director. See, also, 1 Mor. Corp. § 521; *Hammond's Appeal*, 123 Pa. St. 503 (16 Atl. 419); *Higgins* v. *Lansingh*, 154 Ill. 385 (40 N. E. 362); *Inglehart* v. *Hotel Co.*, 32 Hun, 377; *Id.*, 109 N. Y. 454 (17 N. E. 358); *St. Louis, etc., R. Co.* v. *Chenault*, 36 Kan. 51 (12 Pac. 303). In the present case no creditor is complaining. No fraud was perpetrated upon the creditors, and the relations of McKnight to the corporation were not, at the time of the purchase, such as imposed any duty upon him as to the payment of the debts of the company. The assets had all been surrendered to the trustees in liquidation. The circuit judge held that, under these circumstances, the defendant McKnight was entitled to receive full payment.

The decree will be affirmed, with costs.

The other Justices concurred.