# CHARLESTON.

ELLSWORTH WILEY v. WALTER REASER *et als.*

Submitted April 14, 1920.    Decided May 11, 1920.

1. PARTNERSHIP—*Suit by One Partner Against Copartners to Settle Accounts is Barred After Five Years.*

    The provisions of § 6 of ch. 104 of the Code, when relied upon, bar a suit by one partner against his copartners for a settlement of their mutual accounts, after the expiration of five years from the cessation of the dealings between them. (p. 421).

2, CORPORATIONS—*Purchase of its Property by Stockholders and Directors in Good Faith Will not be Avoided.*

    The purchase of the property of a corporation by some of its stockholders, who are also directors thereof, at sales of such property under a valid deed of trust and under an exe-

cution upon a valid judgment, with their private funds, at its fair value, will not be avoided where it appears that such purchasers acted in good faith, and with full opportunity to the other stockholders to protect their interests by contributing to the payment of the debts so as to prevent the loss of the corporate property. (p. 421).

'(LYNCH, JUDGE, absent).

Appeal from Circuit Court, Pleasants County.

Suit in equity by Ellsworth Wiley against Walter Reaser, K. Snodgrass, and others, in which Samuel Boyles filed a petition joining plaintiff in plea for relief. Decree for plaintiff, and for Boyles, and defendants K. Snodgrass and others appeal.

*Reversed, and bill and petition dismissed without prejudice.*

*McClure & McClure* and *Jno. F. Barron,* for appellants.
*G. D. Smith,* for appellee Wiley.
*Craig & Wells,* for appellee Boyles.

RITZ, JUDGE:

This suit in equity was instituted for the purpose of enforcing a claim which the plaintiff asserts against certain of the defendants, who it is claimed composed a mining partnership, and against a corporation subsequently formed by such mining partners, and to subject the property formerly owned by such corporation in the hands of some of the defendants, who purchased part of it at a trustee's sale, and part at a sheriff's sale under an execution, to sale in satisfaction of said debt. One Samuel Boyles, another creditor of either the partnership or the corporation, or both, filed a petition joining the plaintiff, and asking to have his claim enforced in this suit. The relief asked by the plaintiff and said Boyles was granted, and the defendants K. Snodgrass, G. W. Niswander and Conrad Goetz prosecute this appeal.

It appears that in the fall of 1910 the defendant Walter Reaser secured oil and gas leases on several tracts of land in Pleasants county, and for the purpose of drilling a well on one of them known as the Eddy tract he joined with him several other persons. It is not certain just which of the defendants

were interested in this project while it was being carried on. At any rate the well was drilled in on this Eddy tract and produced gas in small quantities, such small quantities in fact that the same was never marketed except among the local inhabitants. The parties interested at the time the well came in determined to form a corporation, and in the month of December the defendant Niswander-Goetz Oil & Gas Company was incorporated under the laws of the State of West Virginia. The plaintiff was one of the parties jointly interested with Reaser in the drilling of the well on the Eddy farm. He was also one of the parties who formed the defendant corporation, and to him, as well as all the other parties interested, stock was issued in this corporation representing the interests which they severally held in the property, and all of the property held by them in their joint enterprise turned over to the corporation, and it is asserted all debts owing by the mining partnership assumed by the corporation. This corporation was organized in the month of December, 1910, and immediately thereafter it was determined to drill another well on another tract of land upon which a lease was held, known as the Brammer tract. To this end the corporation entered into a contract with one C. P. Newell, by which Newell agreed to drill the well for certain compensation. Plaintiff also claimed that he was employed at this time to do certain hauling and other work around this well, for which the company still owes him, and which is one of the debts set up in this suit. This well was drilled in and produced oil, but in such insignificant quantities that it was never marketed. Part of the compensation due Newell was paid to him, but the company was without funds with which to meet the balance, amounting to something over nine hundred dollars. It was also indebted to a man by the name of Gore in the sum of four or five hundred dollars for supplies purchased for this well. Some of the stockholders, including the appellants, advanced considerable sums of money to meet the obligations of the company, but others of the stockholders declined to make any advancements for this purpose. In the summer of 1911 Gore procured a judgment upon his debt and the company ex-

ecuted a deed of trust upon the Brammer and Eddy leases to secure Newell the payment of the balance due him, with the hope that it would be able to raise the money when the note, which was given at the time, became due, and thus save the property of the company. Shortly before this note became due a meeting of the stockholders was called for the purpose of making arrangements to meet the same and the Gore judgment. Many of the stockholders refused to put up any more money, while some of the stockholders desired to make an assessment against the stock and raise the money and pay off the debts. This could not be done, of course, without the consent of all the stockholders, so that nothing was accomplished at this meeting. The company was unable to borrow any money, its assets being of a highly speculative and uncertain character. Six of the stockholders, however, which included the three appellants, here, determined that they would buy in the property themselves at the sale, with a view of making an effort to save some of their investment, as well as the advancements they had made to the company. All of the stockholders were requested to go into this arrangement, but only the appellants and three other stockholders agreed to put up any money for the purpose. These six, acting through the appellant Niswander, bought in the Eddy and Brammer leases at the trustee's sale for the sum of fourteen hundred and fifty dollars, and the rest of the property was purchased for them by the appellant K. Snodgrass at a sheriff's sale made under an execution upon the Gore judgment for the sum of one hundred dollars. The fifteen hundred and fifty dollars paid by them for the property was disbursed in the discharge of the deed of trust for nine hundred and some dollars and the expenses of sale, and the balance paid on the judgment in favor of Gore, and a deed made by the trustee to Niswander for the Eddy and Brammer leases, and the properties thereon, and to Snodgrass for the other property. This was in the fall of 1911. No further development has been had upon the property, and no claim has ever been asserted to it by any other stockholder since that time. In order to keep these leases alive it was necessary to pay rentals to the owners of the property. For some time these rentals were paid by the purchasers at the sales. Eventually, however, three of them became dis-

satisfied and did not care to make any further advancements for the purpose of protecting the property, thinking that they would never be able to realize anything upon the investment, and preferring to lose what they had in it rather than to put in any more. With this view they assigned and transferred to the appellants all of their interest in the leases for the consideration that they would not be called upon to pay up their share of the money advanced by the appellants to meet the rentals on the leases, so that since that time the three appellants have claimed to own all of this property, and so claimed at the time of the institution of this suit.

The plaintiff claims that while the corporation was drilling a a well on the Brammer farm it contracted with him to do certain hauling and certain other work, for which it owed him the sum of five hundred and fifty dollars, upon which certain payments were made reducing the amount to the sum of three hundred and odd dollars, which he claims is still due him, and there seems to be no doubt about this. As before stated, he was one of the stockholders of the defendant, having procured his stock in lieu of the interest he had in the partnership which drilled the well on the Eddy farm, which interest was given to him in payment for certain work that he did in connection with drilling that well, all of the other parties paying in money for their interests. He claims further that he was employed by the defendant Reaser, representing the partnership which drilled the well on the Eddy farm, to look after the community property, and was to receive ten dollars a month for his services, and that he continued to perform these services after the corporation was formed, and has been doing so down to the institution of this suit, for which he claims nothing has ever been paid to him. This contract, he claims, was made about two months before the corporation was organized, so that, if he is correct, about twenty dollars of this amount was earned before the organization of the corporation, and the balance of it since that time. It is significant, however, that during all of these years, and while the company was a going concern, he never rendered any account for any such compensation, in fact made no request upon anybody for the payment thereof, and not until the bringing of this suit was any claim ever made by him

therefor. The other part of his claim is made up of rentals upon a lease which was held upon his land. At the time that Reaser was taking up the leases he secured one from the plaintiff upon a tract of land owned by him. Plaintiff says that the rentals due under this lease were paid until about four years before he was giving his testimony, since which time no rentals have been paid. He claims in his bill that the purchases made by Snodgrass and Niswander were for the benefit of the corporation under an agreement that the property would be bought in by them and held for the corporation.

One Samuel Boyles, who claims to have furnished certain material for the partnership, as well as for the corporation, had a suit pending in the circuit court of Pleasants county to recover the amount claimed to be due him. An order was entered staying the prosecution of that suit and requiring Boyles to file a petition in this suit asserting his claim. This was done by him. This claim is made up of items consisting of the purchase money for materials which Boyles claims he furnished to Reaser for the benefit of the joint enterprise, and compensation for the use of certain other materials that were furnished.

The appellants deny that the purchases of Snodgrass and Niswander made at the trustee's sale and the sheriff's sale were for the benefit of the company, but assert that the same were made by them on behalf of themselves, and their associates, for the purpose of protecting their interests, and that all of the money paid out therefor was the money of themselves and their associates. They deny any liability on account of any of the claims set up by the plaintiff or the petitioner Boyles, claiming that they were not members of the partnership which drilled the well on the Eddy farm, having acquired their interest after that time, and that so far as the said debts are debts of the corporation they, as stockholders thereof, are not liable therefor, and also pleaded the Statute of Limitations against said debts. The court below granted the relief asked, and decreed the property which had been bought by Niswander and Snodgrass, and formerly owned by the corporation, to sale in satisfaction of the claims of the plaintiff and said Boyles, holding that the claim of the plaintiff for work done in drilling the Brammer well, and Boyles' claim were first liens upon this property, and would have

to be paid out of the proceeds of the sale before the appellants were allowed to participate therein, notwithstanding it clearly appears that the appellants had furnished all of the money to pay off the liens, which it is admitted were valid liens against this property at the time of the sale, the effect of the decree being to hold that the purchases made by Snodgrass and Niswander were for the benefit of the plántiff and Boyles individually, inasmuch as the decree relieves the property from these liens for their individual benefit.

According to the plaintiff the mining partnership which existed prior to the organization of the corporation was not indebted to him in the sum of more than twenty dollars for two months services, which he claims to have rendered, at ten dollars a month. All of the rest of his claims accrued subsequent to the organization of the corporation in which he was a stockholder. It is admitted that the partnership ceased business at the time of the organization of the corporation, and that all of its assets of every kind and character were taken over by the corporation, which likewise assumed to pay all of its debts. This was more than five years prior to the institution of this suit, so that any claim that the plaintiff may have against the appellants was barred by the provision of § 6 of ch. 104 of the Code pleaded by appellants, barring any suit by one partner against his copartner after five years from the cessation of the dealings in which they are interested together.

The claim set up by the petitioner Boyles also originated more than five years before he filed his petition in this suit, and it would be barred by the Statute of Limitations were it not for the fact that it appears that he had brought an action of assumpsit, within the statutory period, to enforce his claim, which suit is still pending.

So far as the claims of these parties against the corporation are concerned, their right to enforce the same in this suit is dependent upon whether the purchases made by Snodgrass and Niswander were for the benefit of all of the stockholders of the corporation, or only for the benefit of such as paid in their money for the purpose of enabling them to make the purchases. There seems to be no real conflict in the evidence upon this point. It is true the plaintiff and one witness, McFarland, testify that the

purchases were made for the benefit of the corporation. They made these answers to questions by counsel for the plaintiff as to whether or not Snodgrass and Niswander made these purchases for their own benefit or the benefit of the corporation, their answers being that they purchased for the benefit of the corporation. But both of them in their explanation of this conclusion state that the understanding was that the purchases were to be made by Snodgrass and Niswander with money contributed by the stockholders, and that all stockholders who contributed would be interested in the purchases. Plaintiff admits that he did not contribute, but declined to do so, so that upon his own statement he was not interested in these purchases. He says, however, that inasmuch as the corporation owed him, he should have his interest without being required to put up any money to assist in making the purchases. He does not even suggest, however, that the parties who did put up the money ever agreed to take him in on any such terms. As a matter of fact it appears that every one of them had advanced in money quite as much as the corporation owed the plaintiff for his work at that time, and there is no reason for thinking that they were willing to put up the additional sum necessary to purchase the property and buy it in for the benefit of themselves and the plaintiff without calling upon him to put up any money for the purpose. McFarland, the plaintiff's other witness, testifies that the understanding was that such of the stockholders as would pay their proportionate part of the money to be raised in order to purchase the property should be interested therein; that he paid his part of the money, and that he was given such interest, which he held until he became convinced that it was futile to attempt to realize anything upon his investment, when he transferred this interest to the appellants. All of the other witnesses corroborate McFarland in this regard. They say that an endeavor was made to raise this money by an assessment upon the stockholders, but that the greater part of the stockholders declined to submit to such assessment, and it was then proposed that such of them as cared to make the effort to realize anything upon their investment out of the property join together and raise a fund to purchase the same; that this was accordingly done, and that the three appellants and three other stockholders did raise the fund

and did purchase the property, and that nobody else made any contribution thereto. There is no suggestion of any collusion or any fraud in reference to the sales. In fact, from the appearances at that time, it would seem that the amount paid for this property at these sales was very much more than could reasonably be expected to be realized for it from any other source. It was nonproductive; two wells had been drilled without sufficient production to justify marketing the same, and it was highly improbable that the leases could be so handled as to realize anything therefrom. The six stockholders, however, who put up their money to make the purchases were willing to take the chance, and now by the decree of the court the property is taken away from them and made subject to the debt of the plaintiff and the petitioner Boyles as first liens, without making any provision for refunding to them the amount which they paid to relieve it of the liens which were superior in dignity to the claims of Boyles and the plaintiff, or to recompense them for the money which they have paid out since in the way of rentals in order to keep the leases from becoming forfeited. The only ground we can see in the evidence upon which the appellants can be held as having purchased this property for the benefit of the corporation is that they were officers and stockholders of the corporation. This status required of them the utmost good faith. The evidence clearly shows that all of their acts in connection with the corporate interests were in entire good faith. Every stockholder was given the fullest opportunity to protect his interest in the same way that they attempted to protect theirs. It was not within their power to compel the other stockholders to protect their interests, nor is it within the power of the other stockholders at this time to compel them to surrender the property which they purchased when there is no suggestion that they did not have the same opportunity, and as full and complete opportunity as the appellants had to protect themselves in the first instance. There is no reason why corporate officers and stockholders may not purchase the property of the corporation at an execution sale or at a sale under a deed of trust, provided the purchase is free from fraud, and is in good faith, and has not been accomplished by any deception practiced upon the other stockholders. This is well established by the authorities. 3 Cook on

Corporations, § 653; *Twin-Lick Oil Co.* v. *Marbury,* 91 U. S. 587; *Osborne* v. *Monks,* (Ky.) 21 S. W. 101; *Potvin* v. *Denny Hotel Co.,* 26 Wash. 309; *McKittrick* v. *Arkansas Central Ry. Co.,* 152 U. S. 473; *Relender* v. *Riggs,* 20 Col. App. 423; *Snediker* v. *Ayers,* 146 Calif. 407; *Ready* v. *Smith,* 170 Mo. 163; *Inglehart* v. *The Thousand Island Hotel Co.,* 109 N. Y. 454; *Lucas* v. *Friant,* 111 Mich. 426; *Webb* v. *Rockefeller,* 66 Kansas 160. Our own case of *George E. Warren Co.* v. *A. L. Black Coal Co..,* 85 W. Va. 684, 102 S. E. 672, is direct authority for the proposition we have here. In that case creditors of a corporation were seeking to hold the purchasers of its assets at a judicial sale liable for the debts not paid, upon the same ground that is asserted here, that the purchasers were the officers and stockholders of the corporation, and we held that in the absence of any showing of fraud or collusion no relief could be granted.

In this case the plaintiff has no right to maintain this suit to settle the affairs of the partnership by which the Eddy well was drilled, for the reason that his claim is barred by the Statute of Limitations, which the appellants relied upon. He cannot maintain a suit to wind up and settle the affairs of the corporation because it appears that all of its property has been sold and its franchises forfeited by the state. The petitioner Boyles was neither a member of the partnership, nor a stockholder in the corporation, so that there is no jurisdiction in equity to entertain his claim against the partners. He has a suit at law still pending for the enforcement of that claim, and he can have all the relief to which he may be entitled in that suit.

Our conclusion, therefore, is to reverse the decree of the circuit court of Pleasants county and dismiss the bill, as well as the petition of Boyles, without prejudice to the plaintiff or said Boyles to assert any claims they may be entitled to in any proper forum.

*Reversed, and bill and petition dismissed without prejudice.*