# CHARLESTON.

TOMLINSON *v.* POLSLEY.

Submitted January 21, 1888.—Decided February 25, 1888.

1. ATTORNEYS—-CONTRACTS BY—-CO-PARTNERSHIP—-ACCEPTANCE OF RETAINER.

   If attorneys who are co-partners accept a retainer, the contract is joint, and continues to the termination of the suit; and neither can be released from the obligation, either by a dissolution of the firm, or by any other act or agreement among themselves. (p. 114.)

2. ATTORNEYS—-CONTRACTS BY—CO-PARTNERSHIP—ACCEPTANCE OF RETAINER.

   But the contract is terminated by the voluntary dismission of the suit by the plaintiff, and the rights of the parties to the contract are then fixed. (p. 115.)

3. ATTORNEYS—-CONTRACTS BY—-CO-PARTNERSHIP—ACCEPTANCE OF RETAINER.

   Where a law firm was employed to assist in the prosecution of a suit in the State court to set aside a will, and the fee was contingent on the success of the plaintiff; and, when the cause was ready for trial, the plaintiff, without the consent of his counsel, dismissed his suit in the State court, and employed one of the said firm, after the dissolution of the partnership, to bring a suit in the Circuit Court of the United States for the same purpose, and he filed substantially the same bill, *held,* this is a separate and distinct suit, and the former employment has nothing to do with it and the old firm is not entitled to any of the fees earned in the new suit. (p. 115.)

*J. W. English* for appellant.

*Gunn & Gibbons* and *Simpson & Howard* for appellee.

JOHNSON, PRESIDENT:

This is a suit in chancery, instituted in April, 1886, in the Circuit Court of Mason county, to settle the law-partnership of the plaintiff and the defendant. The cause was referred to a commissioner, who reported that the defendant, Polsley, upon the settlement, was indebted to the plaintiff in the sum of $135.53 unless the plaintiff was entitled to one-half of two certain notes executed by Henry J. Fisher to said Polsley,—one for $4.000.00, and the other for $3,000.00,—which the commissioner left the court to decide on the evidence, and, if the court decided that Tomlinson was entitled to one-half of said sums, then he found Polsley indebted to Tomlinson in the sum of $3,250.00, in addition to said sum of $138.53. By a supplemental report he allowed another small credit, which reduced the sum due, if the two notes were to be excluded, to $127.61.

Polsley excepted to the report, but, as the exceptions are not here insisted upon by him or his counsel, they will be disregarded. The court overruled the exceptions, and refused to charge Polsley with one-half of the said two notes, confirmed the report, and rendered a decree against Polsley for $127.61 and the costs of the suit. From this decree Tomlinson appealed, alleging as errors that the court erred in holding that the two notes of $3,000.00 and $4,000.00, were not assets of the late law-firm of Tomlinson & Polsley.

The main controversy in this suit was whether the said two sums did belong to the firm, or whether they belonged exclusively to D. W. Polsley. The bill alleges they were for fees in a suit in which the firm was employed, the object of which was to set aside the last will of Henry J. Fisher, deceased. That the fee, at the time of the employment, was a contingent one; young Fisher, the plaintiff, telling them their fees would depend on the result of the suit. If they succeeded, they could "take out of the estate until they were satisfied." The answer denies that the sums were partnership assets; and insists that the said suit was on the motion of the plaintiff, without consultation with or advice from his counsel, peremptorily dismissed; and that these notes were executed to Polsley for his services in the Federal Court on

a suit brought there for the same purpose, and after the dissolution of the firm of Tomlinson & Polsley.

The facts are as follows : By agreement in writing of said Tomlinson and Polsley, they entered into a law-partnership, on the first day of October, 1873, to "practice law in the county of Mason, the District Court of the United States for West Virginia, and the Supreme Court of Appeals of West Virginia." Nothing is said in the agreement as to how long the partnership was to continue. In the year 1883, January 1st, Henry J. Fisher died. It was a short time after this that the said firm was employed by young Fisher to bring suit to set aside the will. Other counsel were employed as follows : W. R. Gunn, R. Wiley, James H. Couch, J. S. Spencer, C. W. Phelps, John A. Gibbons, and Col. Hounshell. Thus no less than nine lawyers were employed by the plaintiff in the suit. The suit was brought in the Circuit Court of Mason county early in 1883, and was pending there until the special term of said court in April, 1884, when, to the surprise of almost, if not all, the counsel, a telegram was received from Henry J. Fisher, Jr., from Chicago, where he then lived, ordering his counsel peremptorily to dismiss the suit. Thereupon, on motion of his counsel, it was dismissed.

Tomlinson, in his deposition, says the firm was dissolved in 1884; that they were engaged in the case from the time they were retained until it was dismissed by order of the Circuit Court, but was never discharged, "but considered myself employed by said Fisher under our original contract until the case was finally terminated in the United States Court;" that the services rendered by said firm were principally rendered by Mr. Polsley, while he, Tomlinson, was attending to other cases in which they were engaged. He further said, the first he knew of notes being taken, "Fisher came to me, and wanted to give me his note for my services in the case, and told me he would like to settle up the fees. I informed him I would see Mr. Polsley, and see what we would charge him. I met Mr. Polsley on the 22d day of January, 1885, at night, and asked him what he would charge Mr. Fisher for our services rendered in the case, telling him Fisher had been to me trying to fix the fee; he at the time stating : "Oh, you

know that I don't know what to fix the fee at. You fix it yourself."

The next morning Mr. Fisher came to my office again to give me his note on the fee, and I stated to him that I hardly knew what to say, as Mr. Polsley had not yet determined what the fee would be, but I was willing to take what he had given the rest of the attorneys, and he said he had executed his note to Couch and others for $500.00. I then wrote his note on the 23d of January, 1885, payable to my order for $500.00, and Fisher told me to put interest from date. I did so, and he signed it; and to my surprise the next day or two I found a deed of trust left for record in the county clerk's office, executed by said Fisher to C. Sehon and J. J. Bright, trustees, in which D. W. Polsley was secured in the payment of $3,000.00, executed by said Fisher, bearing date on the 19th day of January, 1885, and W. R. Gunn was secured for a $2,000.00 note in the same trust, and Hounshell and Hutchinson also. I immediately returned to my office, and gave Mr. Polsley written notice that I would claim half of that note; and to my utter surprise, in a few weeks after, I found that Mr. Fisher had given Mr. Polsley another deed of trust, executed to the same trustees, to secure a $4,000 note; the note bearing the same date as the $3,000 note, and both payable one year after date, with interest. I told Mr. Polsley I had no idea that he would attempt to defraud me that way, and that I would sue him for my share of the notes." He said that, when the cause was dismissed in the Circuit Court of the State, it was his understanding from Mr. Fisher, and all the attorneys in the case, that the same attorneys would bring a similar suit in the United States District Court for West Virginia.

On this point Mr. Gunn, in his deposition, says: "I take it that Mr. Polsley and myself had perhaps the principal control over the case; at least, we were so advised by Mr. Fisher. I knew of no such consultation, or any determination of Mr. Fisher's counsel to dismiss the case. Mr. Polsley and myself received peremptory orders by telegram to dismiss said suit, which was done at the April special term, 1884, without any consultation with any of the other attorneys, and in doing this we simply obeyed the order of Mr.

Fisher." In answer to the question, "State when the suit was instituted in the Federal Court by Mr. Fisher, and who were retained as his counsel in that cause in that court," said: "Some time after being dismissed here, I think about the latter part of May, 1884. Mr. Hounshell, Mr. Polsley, Mr. Hutchinson, and myself." And further said that these last-named gentlemen had the entire management of the cause in the Federal Court. All the other attorneys before mentioned in the suit in the State Court had nothing to do with the suit in the Federal Court. "I regarded them as all discharged by the dismissal of the suit in the State Court, and I believe they did also."

James H. Couch, Jr., in his deposition, said: "I was one of his counsel. If there was any such consultation, I was not present, nor had any knowledge of it. The first intimation that I ever had that said suit would be, or was to be, dismissed, was when some one—Mr. Polsley, as I now recollect,—made a motion in court to that effect. I was not retained in the suit that was afterwards brought in the Federal Court. At the time that the motion was made to dismiss said suit, I, with some other of Mr. Fisher's counsel, expressed great surprise and indignation at such action on his part, without having first advised with or consulted us in reference to the matter; and we were then shown, I think, a telegram to Mr. Polsley ordering a dismissal of the suit, and saying he would give us an explanation for such a course by letter."

J. S. Spencer, in his deposition, said he was one of Mr. Fisher's counsel; that he had no recollection of any consultation as to the dismissal of the cause in the State Court; that on the contrary, he thought the suit was dismissed without the consent of the majority of his counsel; that he was not interested or retained as counsel in the cause in the Federal Court.

Rankin Wiley, Jr., in his deposition, said he never learned of any changes in regard to counsel, excepting the employment of John A. Hutchinson, of Parkersburg, to assist in the case.

Polsley, in his deposition, agrees with Mr. Gunn as to the number and names of the counsel conducting the suit in the

Federal Court. He said he and Mr. Tomlinson never were partners in any business in that court. He says the partnership was dissolved in March, 1884; but the announcement thereof was not published in the papers until in April, 1884; that Mr. Tomlinson took fees to himself in March, 1884; that the fees agreed upon between Mr. Fisher and himself in the cause in the Federal Court was $7,000.00,—the two notes of $3,000.00 and $4,000.00; that the deed of trust to secure the $3,000.00 was executed before the decree setting aside the will was rendered in the Federal Court; that Tomlinson never came to him to know what they should charge Fisher in the two causes. He did ask him what they ought to charge for their services, in the suit in the State Court, and he told him that he would leave that to him, and he fixed it at $1,000.00, and took Mr. Fisher's note for $500.00. He said nothing about the suit at Parkersburg, and he never dreamed that Tomlinson ever had a thought about claiming any part of the fee in that cause. He did nothing in it, took no interest in it, was never consulted about it, and did not bear, or offer to bear, any portion of his expenses while attending to it. He said Mr. Fisher settled with his other attorneys in the State Court,— Mr. Couch, $500.00; C. W. Phelps, $500.00; J. S. Spencer, $400.00; R. Wiley, Jr., $500.00; and John A. Gibbons, $300.00. On cross-examination, in answer to the question, "Was not the same brief which was filed in the Circuit Court of Mason county filed by you in the United States Court? said: "It was. It was my property, and I will use it again if I have a similar case."

Henry J. Fisher's deposition was taken, but he does not say why he dismissed his suit in the State Court, nor whether he consulted his counsel about it. There is some stress put upon the declaration in Fisher's deposition about his not employing Polsley separately. He says, in answer to a question about the suit that was instituted in the State Court: "I never employed Mr. Polsley separately. He was at the time of his employment by me a practicing lawyer, and junior partner of the then law firm of Tomlinson & Polsley. He answered the question, "State what services either the defendant or plaintiff rendered for you in any suit

in West Virginia." "Not being in West Virginia during the pendency of the suit you refer to, except occasionally, I am unprepared to state what special services, if any, either plaintiff or defendant rendered me."

There is exhibited with the defendant's answer a contract made on the 19th day of January, 1885, between said Fisher and John A. Hutchinson, D. S. Hounshell, W. R. Gunn, and D. W. Polsley, which contains the following: " Whereas, the parties of the second part have heretofore been employed by, and are still in the employment of, the party of the first part, as his counsel in a suit now pending in the Circuit Court of the United States for the district of West Virginia, * * * and said parties of the second part have been amply secured in such fees as they have agreed upon, and hereby ratify and confirm said agreement, it is especially covenanted and agreed by the said parties of the second part jointly, and by each of them severally and personally, that their services as lawyers shall be given to the party of the first part upon any appeal to the Supreme Court of the United States taken by a party to said suit, or otherwise, seeking to disturb the decree of said court, if the same be pronounced in Fisher's favor, without any other or further fee or remuneration from him," etc.

I have given a fair statement of the points in controversy, and the substance of the evidence on both sides. It is true, as insisted by the counsel for appellant, that it is a violation of good faith for a partner to clandestinely stipulate with third persons for any private and selfish advantage and benefit to himself, exclusive of the partnership. If any partner shall so stipulate clandestinely for any private advantage or benefit to himself, to the disadvantage or fraud of his partners, he will, in equity, be compelled to divide such gains with them. *McMahon* v. *McClernan*, 10 W. Va. 419. If attorneys who are co-partners accept a retainer, the contract is joint, and continues to the termination of the suit, and neither can be released from the obligation or responsibilities assumed, either by a dissolution of the firm, or by any other act or agreement among themselves. *Walker* v. *Goodrich*, 16 Ill. 341; *Harris* v. *Osburn*, 2 Cromp. & M. 628; *Whitehead* v. *Lord*, 11 Eng. Law & Eq. 587. Business in-

trusted to a law-firm may be attended to by any member of the firm, and it would be no defence to an action for fees that all the members did not take part in prosecuting or defending the cause. *Simon* v. *Brashear*, 9 Rob. (La.) 59, 41 Amer. Dec. 321. The dissolution of the partnership, whether it be by the voluntary act or will of the parties, the retirement of a partner, or by mere efflux of time, will not in any manner change the rights of third parties as to any past contracts or transactions with or on account of the firm, but the efficacy and validity of these obligations will remain the same, and be binding upon the partnership, in the same manner as if no dissolution had taken place. Story Partn. § 384; *Walker* v. *Goodrich*, 16 Ill. 341. After the dissolution of a partnership each partner becomes a trustee for the others, as to the partnership funds in his hands, in order to a fair settlement and just distribution of the effects. *Ruffner* v. *Hewitt*, 7 W. Va. 586.

If a contract is made with a law-firm for a certain fee upon a favorable termination of the suit, and the plaintiff, without their consent, dismisses the suit, for breach of said contract the said attorneys may recover such damages as their services are reasonably worth, as well, also, as for any loss or injury they may have sustained; provided, that the whole recovery shall not exceed the entire amount stipulated in the contract. *Polsley* v. *Anderson*, 7 W. Va. 202. Here was no certain sum stipulated to be paid to Fisher's attorneys at the time of their employment in the State Court. It was all contingent. If these parties had any cause of action at all against Fisher for their fees, it arose at once upon his dismissal of the cause in the State Court without their consent. The dismissal of that suit put an end to the employment of every one of his attorneys, and whatever rights they had against him for fees were then perfected, and they could sue.

Now, unless Tomlinson could show that he, with Polsley, was employed after this, it follows he had no right to the fees earned in another suit, in another court. The firm of Tomlinson & Polsley had been dissolved when the suit in the State Court was dismissed, and of course there could have been no employment of the firm after that time, and we have seen the old employment terminated with the dis-

mission of the cause.   It is not material what was the motive that prompted Fisher to dismiss his suit.   The contracts with his attorneys terminated then, and, unless Tomlinson was employed to assist in the cause in the Federal Court, he has no interest in any fees earned there.   Tomlinson himself fixed the fee in the State Court for the firm at $1,000.00.   Of this he received one half.   With Polsley's employment, after dissolution of the partnership, in another suit, in another court, in another jurisdiction, although a suit for the same cause, to obtain the same decree, Tomlinson had nothing to do, and in it he could have no in terest.   •

There is no error in the decree of the Circuit Court, and it is affirmed.

AFFIRMED.