294 S.E.2d 919

**Dutch M. BARKER, Executrix of the Estate of Creed Barker, Deceased**

v.

**SMITH AND BARKER OIL AND GAS CO., INC., a Corporation, Walter E. Smith and Edward M. Smith.**

**No. 14834.**

Supreme Court of Appeals of West Virginia.

July 1, 1982.

Rehearing Denied Sept. 16, 1982.

Hedges & Jones, Orton A. Jones and Thomas C. Evans, III, Spencer, for appellant.

Wilbur D. Webb, Spencer, Victor Hamilton, Grantsville, for appellees.

McGRAW, Justice:

Dutch M. Barker, executrix of the estate of Creed Barker, plaintiff below, appeals from the final order of the Circuit Court of Calhoun County in a civil action instituted by the decedent against Smith and Barker Oil and Gas Company, Inc., Walter E. Smith and Edward M. Smith. The plaintiff below alleged that he was a general partner with the appellees in an oil and gas development enterprise and that the appellees had breached their fiduciary duty to him by diverting business opportunities for their own gain. The circuit court found that no partnership existed between the parties and that if a partnership had existed a claim for relief thereon would have been barred by the statute of limitations. The court concluded that the appellees had committed no wrong nor violated any fiduciary trust, and entered judgment for the appellees. We reverse the judgment of the circuit court and remand the case for further proceedings.

In 1955 [1] the appellant's now deceased husband, Creed Barker, entered into an oil and gas development business with Edward M. Smith and, his son, Walter E. Smith. A

---

1. In the early 1950's Creed Barker was in partnership with Edward Smith and his wife, who later gave her interest to Walter Smith. Creed Barker and Edward Smith obtained four leases together in 1954; Walter Smith joined them in promoting wells on these leases in 1955.

formal partnership agreement was never executed, but the parties conducted business in the name of "Smith and Barker Oil and Gas Company." Although the appellees apparently denied at trial that they were partners with the decedent, they now admit that a partnership existed at this time. The business in which the parties were engaged was a promotional partnership. They would obtain oil and gas leases, sometimes in the names of the individuals, but most commonly in the name of Smith and Barker Oil and Gas Company, and would then promote the leases by selling or "stocking out" to subscribing investors working interests in proposed wells. The promoters would then drill and, once the wells started producing, make assignments of shares in each well to each subscriber. This arrangement gave rise to a number of "well partnerships" between the promotional partners and the individual investors, which are not in question in this case. The wells were promoted to the fullest extent possible, and any unsold interest was divided equally among the three promoters.

The three promoters jointly managed each completed well, supervising maintenance, production, marketing of the oil and gas, collection of income, payment of taxes, and disbursement of profits. Although their duties overlapped in some cases, each partner had primary responsibility for a different aspect of the business. Edward Smith obtained most of the leases, using knowledge gained from his employment with Cabot Corporation. Creed Barker conducted and supervised field operations, drilling and servicing wells and placing the product on the line. Walter Smith performed the office paperwork, and kept the books. The partnership business was usually conducted through daily, informal meetings among the three partners.

The sale of working interests to investors often did not fully cover completion costs, so each partner paid one-third of the balance of the costs. The income from their shares in the well partnerships was deposited in a "capital account," which was used to pay the payroll and other business expenses of the partnership and to finance new investments. If it became necessary to obtain a loan to cover costs, a note was executed in the names of the three individual partners, which was signed by each partner or by Walter Smith, using a power of attorney provided him for that purpose. By 1957, the partners had obtained five leases, and promoted and drilled approximately 18 wells.

On January 23, 1958, on the advice of their accountant, the Smiths and Barker formed Smith and Barker Oil and Gas Company, Inc., a West Virginia corporation. Edward Smith, Walter Smith and Creed Barker were the sole stockholders in the corporation, each receiving 50 shares of stock for which he paid nothing. Partnership assets, in the form of tools and equipment were transferred to the corporation. The leases and well holdings owned by the Smiths and Barker, as partners, were not transferred to the corporation. At the only formal stockholders' meeting, held in 1958,[2] Edward Smith was named president, Creed Barker vice-president, and Walter Smith secretary and treasurer. For the tax year 1957, Smith and Barker Oil and Gas Company filed a partnership income tax return; thereafter, the business filed corporate tax returns.

From 1958 to 1960, the parties obtained eight leases in the corporate name. These leases were promoted in the same manner as the partnership leases had been, and the unsold working interests in the wells promoted under these leases continued to be divided equally among Edward Smith, Walter Smith and Creed Barker. During the same period and until 1961, the Smiths and Barker continued to obtain leases together in their individual names and in the name of the partnership. The corporation did not obtain any leases after 1960, but wells con-

---

**2.** Another stockholders' meeting was called for August 5, 1978, during the pendency of the action below, for the purpose of acting on a resolution, adopted by the Board of Directors by a two-to-one margin, recommending the dissolution of the corporation. Creed Barker, the dissenting Director, obtained an injunction to restrain the Board from holding the stockholders' meeting and from taking any further action on the resolution.

tinued to be promoted and drilled under several of the existing corporate leases up to as late as 1971. Unsold interests in these wells were divided among the Smiths and Barker in the same manner.

The business of the corporation was conducted in an informal manner. Decisions as to the stocking out and drilling of wells on corporate leases were made by informal meetings of the Smiths and Barker. All records of the corporation, the promotional partnership and the well partnerships were kept in the same office in a building owned by Walter E. Smith, for which the corporation paid no rent. Equipment owned by the corporation was used to service and drill wells promoted by the promotional partnership and equipment owned by the Smiths and Barker as individuals was used for corporate purposes without payment of rent. The secretary employed to keep records on all of the well partnerships used the corporate offices and was paid by the corporation.

At no time did the corporation own any working interests in the wells produced under any of the leases. It was intended to operate as a funnel through which income was received, expenses were paid and profits were divided. According to the testimony of the parties, the corporation was never intended to be a profit-making venture and the income it derived from servicing wells just barely exceeded operating expenses from the beginning. The Smiths and Barker did not receive a salary for their promotional efforts or a dividend on their corporate stock. Instead they deposited the profits they received from their interests in producing wells into a corporate account which was supplemented by revenues from the stocking-out of working interests and from loans obtained by the individuals to offset the deficit between the drilling costs and promotional revenue.

Most of the money in the corporate account was plowed back into promotion and production for use to pay debts, but a portion of it was used to pay monthly fees to the individuals as compensation for their shares in the well partnership profits. This practice apparently originated prior to 1958, when each partner placed his income from the well partnerships in an operating fund or capital account. At that time Creed Barker and Walter Smith received $250 per month. After the incorporation, the parties continued the practice with each individual receiving a payment of $500 per month, less taxes, from the corporate account. At the end of each year the individuals' profits from the well partnerships would be computed and charged with the amount paid that individual by the corporation.

In the tax years 1958, 1959 and 1960, five well partnerships formed through the promotional activities of the corporation took a number of business deductions on their partnership tax returns. In 1964, a lawsuit filed by the Internal Revenue Service against the individuals involved in the well partnerships resulted in a decision disallowing the deductions on the ground that the well partnerships were associations, taxable as corporations. The Internal Revenue Service assessed a deficiency of $23,000 against the Smiths and Barker as individuals. The parties paid this assessment by selling interests in well partnerships which they held in their own names, depositing the proceeds of the sale into the corporate account, and paying the Internal Revenue Service with checks drawn on that account. Leases held in the corporate name were subsequently assigned to the various well partnerships. After 1960, the corporation was primarily involved in servicing, operating, and maintaining wells promoted by the Smiths and Barker.

In 1960 or 1961, the Smiths and Barker became involved in a series of disagreements involving property acquisitions and the drilling of wells. The Smiths proposed that the corporation purchase certain drilling equipment and real property. Barker indicated that he was not interested in the purchases and the Smiths bought the equipment and the buildings in their own names, although they were subsequently used by the corporation and the well partnerships. At about the same time, the Smiths and Barker were involved in the drilling of wells in the Leading Creek area of Calhoun County on leases obtained and

promoted by the three of them as individuals. One well, the Bigler well, had been drilled and fractured without much success and Barker indicated that he was no longer interested in it. The Smiths informed Barker that they were committed to drill another well, the Rogers # 1, in the same area. Barker indicated that he wanted nothing to do with it. The Smiths testified that Barker said he wanted out of the whole Leading Creek territory. Barker testified that he had referred only to the Bigler and Rogers wells. A third well, the Spencer well, was drilled at about the same time as the Rogers well. The Smiths proposed to fracture the Spencer well and Barker objected. The Smiths subsequently obtained an assignment of Barker's interest in the Spencer well and proceeded to fracture it on their own.

In 1961 the Smiths ceased acquiring oil and gas interests on behalf of any business association that included Creed Barker and began acquiring leases and stocking-out wells as partners in their own names. They also obtained additional interests in existing well partnerships and producing wells, including some originally promoted and drilled by the Smiths and Barker, and purchased interests in an oil and gas company, all without the participation of Barker. The equipment and employees of the corporation were used to service Smith and Smith wells for the same fee charged to Smith and Barker wells for the same service. The Smiths continued to promote and stock-out wells on prior Smith and Barker leases until approximately 1971.

The Smiths testified that Barker had been relieved of all responsibility for field operations in 1961. Barker testified that he continued to work on Smith and Barker leases until he retired in 1970. During this period Barker continued to receive a monthly check in the amount of $500 drawn on the corporate account. In 1972, the practice of transferring the income from well partnerships into the corporate account and paying out a flat monthly rate to the Smiths and Barker ceased. Instead, the small profits from working interests in Smith and Barker wells were paid directly from the well partnerships. When Barker complained to the Smiths, he was told that production had fallen off so badly that there were no profits from which to pay him.

In December 1972, Creed Barker instituted suit against the appellees in the Calhoun County Circuit Court. In his complaint, and an amended complaint filed in November 1977, Barker alleged that Walter and Edward Smith had breached the fiduciary duties they owed to the corporation and to him, as a partner, by diverting numerous corporate and partnership business opportunities for their own personal gain. He alleged that the Smiths had individually engaged in the oil and gas business in direct competition with Smith and Barker Oil and Gas Company, Inc., and sought an accounting, a constructive trust upon properties acquired by them pursuant to this violation, and compensation for the losses sustained by him and the corporation.

Edward and Walter Smith admitted that they obtained and promoted oil and gas leases and wells with Creed Barker, but denied that any express general partnership had ever existed between them. They contended that the only relationship that ever existed was by virtue of their participation, along with numerous other investors, in the various well partnerships formed when the wells were promoted and drilled. The appellees further denied that there was any agreement not to engage in other oil and gas activities, and alleged that both they and Barker had in fact done so, to the exclusion of the others. Finally, the Smiths denied that they had breached any duty owed to Barker or the corporation, and pleaded the statute of limitations as a bar to the action.

The case was submitted to the circuit court on the pleadings, briefs, deposition testimony, and numerous exhibits filed therewith. On June 15, 1979, the circuit court entered a final order denying Creed Barker's prayers for relief. In so ruling, the court found that a partnership between the parties was not proved, and that if such did exist, a claim for relief thereon would be barred by the statute of limitations, since any such partnership ceased to exist

in 1958 when the corporation was formed. The court further found that Barker was not entitled to an accounting because he had not seized any opportunity afforded him to examine the corporation's books. Finally, the court found that Barker had failed to prove that the appellees had committed any acts which would constitute a violation of their fiduciary duties as officers of the corporation. Shortly after the final order was entered, Creed Barker died and his wife, as executrix, was substituted as a party to this action and commenced this appeal.

The appellant's first assignment of error is that the circuit court erred in concluding that no general partnership existed between the decedent, Creed Barker, and the appellees Walter E. Smith and Edward M. Smith. On appeal, the appellees now admit that such partnership did, in fact, exist from approximately 1954 until 1958, but contend that the partnership was terminated in 1958 upon the formation of the corporation. Consequently, they assert the circuit court correctly found this action to be barred by the statute of limitations. The appellant contends that the partnership was never terminated and continued to exist until the institution of this action.

As a general rule, once a partnership is shown to have existed, there is a presumption that it continues to exist until it is shown by competent evidence to have been dissolved at the will of one or more of the partners or by operation of law. *Adkins v. Hash*, 190 Va. 86, 56 S.E.2d 60 (1949). Depending on the circumstances of the case and the intentions of the parties, a partnership may cease to exist when the members of the partnership organize a corporation to succeed it and to carry on the partnership business; however, mere incorporation without some further action to transfer some or all of the partnership assets and business to the corporation will not terminate the existence of the partnership. *Box v. Crowther*, 3 Wash.App. 67, 473 P.2d 417 (1970).

We think it is clear from the record that the promotional partnership entered into by the Smiths and Barker was not dissolved upon the incorporation of Smith and Barker Oil and Gas Company, Inc. The only assets of the partnership which were transferred to the corporation were some office furniture and field equipment. None of the leases taken in the name of the partnership or the names of the individual partners were ever transferred to the corporation, nor were any of the individual's working interests in the wells they promoted and drilled.

In addition, the Smiths and Barker continued to obtain and promote oil and gas leases as partners after the formation of the corporation. The corporation had nothing to do with the purchase and promotion of these leases. Although some leases were also obtained in the corporate name during this period, they were promoted by the three promotional partners, just as they had been prior to incorporation. The corporation derived no benefit from the promotion of the leases held in its name and received no working interest in the wells drilled thereon. All unsold working interests continued to be divided equally among each of the three promotional partners. Corporate and partnership property remained separate in the title, but were used interchangeably by the corporation and the promoters without payment of rent.

Finally, the parties here conducted the financial business of the corporation as if it were merely an extension of the partnership. Loans to benefit the corporation and its promotional activities were taken out in the names of the three partners. The income of the Smiths and Barker from their well holdings was deposited in the corporate account along with income of the corporation from its servicing operations and the subscription fees of investors in the individual wells. The money in this account was then used to pay drilling and equipment costs, loans taken out by the Smiths and Barker, the profits realized by the Smiths and Barker from their individual well holdings and the tax liability of those three individuals as a result of the 1964 lawsuit.

Overall, the evidence indicates that there was no intent on the part of the members

of the promotional partnership to create a corporation for the purpose of taking over the partnership business. By their own testimony, the appellees admit that the corporation was never intended to be anything other than a funnel through which income was to be received and expenses and profits paid. The parties thought of the corporation merely as an effective accounting device which benefited the partnership business. Its promotional activity, which ceased in 1960, was conducted by the three promotional partners as a means of obtaining an anticipated tax advantage as individuals. All the while the partnership continued to obtain and promote leases outside the corporation. In view of these facts, we must conclude that the formation of the corporation did not dissolve the promotional partnership which existed between the appellees and Creed Barker.

The question remains whether the circuit court was correct in concluding that the action below was barred by the statute of limitations. W.Va.Code § 55–2–6 (1981 Replacement Vol.) provides that an action by one partner against another for settlement of the partnership accounts "may be brought until the expiration of five years from the cessation of the dealings in which they are interested together, but not after." The statue does not begin to run until the partners have ceased doing the business of the partnership together. *Wiley v. Reaser*, 86 W.Va. 415, 103 S.E. 362 (1920); *Roots v. Mason City Salt & Mining Co.*, 27 W.Va. 483 (1886); *Boggs v. Johnson*, 26 W.Va. 821 (1885); *Sandy v. Randall*, 20 W.Va. 244 (1882).

■ We think it is clear from the record in this case that there was no "cessation of the dealings" of the Smith and Barker partnership until at least 1971. Although the evidence of the activities of the three partners between 1964 and 1971 is somewhat sketchy, it is undisputed that during this period they continued to promote leases previously acquired by the partnership and to drill wells on those leaseholds. The unsold working interests in those wells continued to be divided equally among the Smiths and Barker, and the profits from those interests continued to be deposited in the corporate account and distributed to the three partners in the same manner as before.

■ Moreover, there is no evidence in the record that either the Smiths or Barker attempted to dissolve the partnership during this period of time. W.Va.Code § 47–8A–31(1)(b) (1980 Replacement Vol.) provides that dissolution of a partnership may be brought about "[b]y the express will of any partner when no definite term or particular undertaking is specified." However, in order to effect dissolution, the partner who wishes to dissolve the firm must give notice of that fact to the other parties. *See O. L. Standard Dry Goods Co. v. Hale*, 148 Va. 640, 139 S.E. 300 (1927). There is nothing in the record to indicate that either the Smiths or Barker gave such notice of an intent to withdraw from or to dissolve the partnership at any time prior to the filing of the action below. Consequently, we conclude that Barker's lawsuit was not barred by the statute of limitations.

Having determined that the circuit court erred in finding that no partnership existed and that if it did exist, Barker's cause of action was barred by the statute of limitations, we turn to the other issues raised by the appellant. The appellant contends that the Smiths breached the fiduciary obligation they owed as partners to Creed Barker. Unfortunately, the lower court made no findings of fact or conclusions of law on this issue once it incorrectly found no partnership to have existed between the parties.

We note, however, that there is extensive evidence upon which the trial court might have found a breach of the partnership fiduciary obligation. The appellees freely admit that after 1961 they acquired and promoted a number of leases and well holdings from which Barker was excluded. The appellees contend that Barker was aware of their separate activities, but Barker denied this, and the appellees admitted that they did not offer Barker an opportunity to participate in the separate ventures.

■ The relationship between partners is fiduciary, and the highest degree of good faith is required. *Mullens v. Wolfe*, 120 W.Va. 672, 200 S.E. 37 (1938). W.Va.Code § 47–8A–21(1) (1980 Replacement Vol.) provides:

> Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

In *Tomlinson v. Polsley*, 31 W.Va. 108, 114, 5 S.E. 457, 460 (1888), the Court held:

> [I]t is a violation of good faith for a partner to clandestinely stipulate with third persons for any private or selfish advantage and benefit to himself, exclusive of the partnership. If any partner shall so stipulate clandestinely for any private advantage or benefit to himself, to the disadvantage or fraud of his partners, he will, in equity, be compelled to divide such gains with them.

■ In view of the facts and the law the circuit court reasonably could have concluded that the acts of Edward M. Smith and Walter E. Smith constituted a breach of their fiduciary trust. The circuit court's failure to make findings on this issue, however, leaves us without a ruling to review. Consequently, we remand the case to the lower court for findings of fact and conclusions of law on this issue.

The appellant also contends that the trial court erred in finding that the appellees, as officers of the corporation, had breached no fiduciary duty owed to the corporation or to Creed Barker. The appellant contends that the appellees violated the fiduciary relation owed to the corporation and to Barker, its minority stockholder, by setting the fees charged by the corporation for well servicing at a profitless low rate, by taking advantage of this low rate to service the wells they acquired to the exclusion of Barker, and by later entering into well servicing in direct competition with the corporation. The appellant also asserts that the appellees diverted business opportunities from the corporation by obtaining leases in their own names to the exclusion of the corporation.

■ We are unable to say that the circuit court was plainly wrong in its finding on this issue. It is evident that the corporation ceased to acquire and promote leases in 1960 after the anticipated tax advantage of such activities was called into question. Thereafter the promotional partnership, which had continued to conduct its business outside the corporation, took over whatever promotional activities the corporation had been conducting. Any diversion of business opportunities by the appellees after 1960 would have to have been to the detriment of the partnership, and not the corporation.

■ Nor do we think the appellees breached their obligation as corporate officers by charging a low rate for well servicing. The parties agree that the corporation was never intended to make a profit and never paid a dividend. The admittedly low rates charged by the corporation for its services to the well partnerships were intended to attract investors for the promotional activities of the partnership. Corporate supervision of well production and maintenance at a low rate ensured that the profits of the partners and the investors would not be eaten up by operating expenses. The corporation charged the same profitless rate to all well partnerships that contracted with it for well servicing. Although the corporation serviced some of the wells promoted by the appellees to the exclusion of Barker, it is clear from the record that the corporation was permitted to use, without compensation, equipment owned by the appellees individually for its operations in servicing those wells in which Barker owned an interest. In addition the appellees serviced some of their own wells.

In short, we cannot say from this evidence that the appellees used their positions as directors and officers of the corporation to derive any profit or advantage, either directly or indirectly in which Barker did not share.

■ Finally, the appellant contends that the trial court erred in refusing to order the appellees to account for their diversion of business opportunities from the partnership to their own benefit. The lower court found that Barker was given the opportunity to examine the books and records of the Smith and Barker Oil and Gas Company, Inc., and did not take advantage of it. For that reason the circuit court refused to require an accounting. The appellant concedes that this finding is correct, but maintains that this is not the accounting required when there has been a breach of fiduciary duty or a diversion of business opportunities. Throughout the proceedings below, the appellees refused Barker access to the records of their separate well and lease holdings. The appellant contends that examination of those records is required to ascertain what properties and profits Barker has been deprived of.

W. Va. Code § 47–8A–22 (1980 Replacement Vol.) provides:

> Any partner shall have the right to a formal account as to partnership affairs:
>
> (a) If he is wrongfully excluded from the partnership business or possession of its property by his copartners,

(b) If the right exists under the terms of any agreement,

(c) As provided by section twenty-one [§ 47–8A–21],

(d) Whenever other circumstances render it just and reasonable.

W. Va. Code § 47–8A–21, as discussed, *supra*, sets forth the fiduciary obligation of a partner. Obviously, the appellant's entitlement to an accounting depends upon the circuit court's findings on the issue of the alleged breach of fiduciary obligation by the appellees. If such a breach is found to have been committed, the appellant is entitled to an accounting.

For the reasons set forth above we reverse the judgment of the Circuit Court of Calhoun County and we remand this case for further proceedings consistent with this opinion.

Affirmed in part; reversed in part.