**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**April 16, 2024**
released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia ex rel. Pachira Energy, LLC**
**Plaintiff Below, Petitioner**

**v.)  No. 23-142** (Monongalia County 18-C-369)

**The Honorable Cindy Scott,**
**Judge of the Circuit Court of Monongalia County,**
**Northeast Natural Energy LLC and NNE Water Systems LLC,**
**Defendants Below, Respondents**

# MEMORANDUM DECISION

Petitioner Pachira Energy, LLC[1] ("Pachira") seeks a writ of prohibition to prevent the Circuit Court of Monongalia County from enforcing the remedy of dissociation as set forth in its January 11, 2023,[2] order. After a careful review of the parties' arguments, the record before this Court and the applicable law, we conclude that the circuit court committed a clear legal error in ordering dissociation when that relief was not requested by either party. Accordingly, we grant the petition for writ of prohibition, vacate the order dissociating Pachira from the water system association, and remand this case to the circuit court for further proceedings. Because this case presents no substantial question of law, we find that it satisfies the "limited circumstances" of Rule 21(d) of the West Virginia Rules of Appellate Procedure and is appropriate for disposition by a memorandum decision rather than an opinion.

## I.      Facts and Procedural Background

These parties were previously before this Court on respondent Northeast Natural Energy LLC's appeal of the circuit court's award of a preliminary injunction to Pachira. *See Ne. Nat. Energy LLC v. Pachira Energy LLC*, 243 W. Va. 362, 844 S.E.2d 133 (2020) ("*Pachira I*"). At that time, based upon the record before it, this Court described the parties' relationship as follows:

---

[1] Petitioner appears by counsel Benjamin L. Bailey, Benjamin J. Hogan, Christopher D. Smith and Bailey & Glasser LLP. Respondents appear by counsel Ancil G. Ramey, Lori A. Dawkins, Bridget D. Furbee, Garrett M. Spiker, Jon C. Beckman, Brian Gallagher and Steptoe & Johnson PLLC.

[2] The court first mandated dissociation in its November 12, 2021 order; the January 11, 2023 order stemmed from Pachira's efforts to modify that ruling.

In 2011, plaintiff Pachira Energy LLC ("Pachira") entered into an agreement with defendant Northeast Natural Energy LLC ("Northeast"). The agreement established the Blacksville Area of Mutual Interest ("Blacksville AMI") and set forth guidelines for exploiting oil and gas leases and other mineral interests in an area encompassing parts of Monongalia County, West Virginia, and Greene County, Pennsylvania. Pachira and Northeast agreed that all jointly-held leases within the Blacksville AMI would be developed with Northeast owning a 75% working interest and Pachira owning a 25% working interest. The parties subsequently entered into a Joint Operating Agreement to operate natural gas wells on the leased lands, and again agreed to split costs and profits using the same 75%/25% ratio.

At some later point, Pachira and Northeast entered into an oral agreement to develop and operate a water system. This system was originally designed to efficiently transport water from Dunkard Creek, a stream within the Blacksville AMI, for use in the drilling and hydraulic fracturing ("fracking") of wells within the Blacksville AMI. The parties agree that there is no written agreement governing the construction, operation, or maintenance of the water lines and facilities. Despite no such formal agreement, Pachira and Northeast jointly shared the costs of the water system using the same 75%/25% ratio previously used in the Blacksville AMI agreement and the Joint Operating Agreement.

*Id.* at 364-65, 844 S.E.2d at 135-136.

In September 2018, Pachira filed its initial complaint alleging that Northeast breached its agreement with Pachira as to the water system. Pachira's complaint sought declaratory relief and an injunction as to the water line and handling facilities. Pachira also filed a motion to enjoin Northeast's alleged improper use of the water line and handling facilities. After a September 19, 2018, hearing the circuit court granted the motion in part, finding that Northeast's conduct would cause irreparable harm if the injunction did not issue, and enjoining Northeast from transporting water to locations outside of the Blacksville AMI, or selling water to third parties for use outside of the Blacksville AMI. Northeast appealed the preliminary injunction order to this Court and in June 2020 we issued an opinion affirming the preliminary injunction order. *Id.* at 371, 844 S.E.2d at 142. In *Pachira I*, this Court noted:

The evidence before the circuit court suggested that both Pachira and Northeast invested significant amounts of money, time, and labor to construct, operate, and maintain the water system in the Blacksville AMI. Even though the water system was not titled in the name of a particular partnership (instead, the system appears to have been titled in the name of Northeast Natural Energy before being transferred to its subsidiary, NNE Water Systems), the water system was constructed using assets pooled by Pachira and Northeast for the purpose of constructing, operating and maintaining a water system to support natural gas production in the Blacksville AMI.

*Id.* at 368-69, 139-40.

2

Following the issuance of this Court's opinion, Pachira filed a motion before the circuit court for judicial dissolution of the partnership pursuant to the West Virginia Revised Uniform Partnership Act ("the Act"), as codified in Chapter 47B of the West Virginia Code.[3] Pachira argued that the partnership should be dissolved pursuant to West Virginia Code § 47B-8-1(5)(ii) (1995), which provides a mechanism for dissolution and a winding up of a partnership when "[a]nother partner has engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with that partner." *Id.* Pachira asserted that Northeast had engaged in conduct relating to the partnership business which made it not reasonably practicable to carry on the partnership with Northeast and, accordingly, it sought to dissolve the partnership and participate in the winding up of the affairs.

The circuit court found that the parties were partners in a partnership and that the Act applied. However, the court did not dissolve the partnership through a judicial determination as requested by Pachira, nor did the court analyze Pachira's request for dissolution pursuant to West Virginia Code § 47B-8-1(5)(ii). Instead, the court, sua sponte, treated Pachira's motion as a motion to withdraw, and dissociated Pachira from the partnership without a dissolution of the partnership. In ordering Pachira's dissociation, the circuit court order noted that it "fashioned the relief that was equitable and just" because Pachira previously sought a partition by allotment under Northeast and NNE Water System's theory that the property was owned by a tenancy in common. The court therefore concluded that the remedy of dissociation—which it determined was similar to Pachira's requested relief pursuant to the allotment statute[4]—was appropriate. According to the court, "[d]issociation gives Pachira the value of its interest in the Water System Partnership while allowing the remaining partners to continue operating the Water Facilities for the benefit of the working interest owners in the wells drilled within the Blacksville AMI—wells in which Pachira maintains a working interest regardless of dissociation from the Water System Partnership." The court concluded that Pachira could be dissociated without a dissolution of the partnership, in part, because it found that the partnership consisted of three partners—Pachira, Northeast and NNE Water Systems—rather than only Pachira and Northeast, as Pachira argued.[5]

---

[3] West Virginia Code §§ 47B-1-1 to -11-5.

[4] *See* West Virginia Code §§ 37-4-1, -3. West Virginia Code § 37-4-3 provides, in pertinent part:

> When partition cannot be conveniently made, the entire subject may be allotted to any party or parties who will accept it, and pay therefor to the other party or parties such sum of money as his or their interest therein may entitle him or them to; or in any case in which partition cannot be conveniently made . . . .

[5] It is not clear from the record before this Court whether either party argued that there were three partners to any agreement prior to the entry of the circuit court order. At a subsequent hearing Pachira argued that respondents had not taken the position that both respondents were parties to the partnership until after the court entered its order of dissociation; instead, respondents admitted in answers to the amended complaints that Northeast had *assigned* its interests in the water line to NNE Water Systems. Because we find that the circuit court exceeded its legitimate authority in ordering relief which no party requested, we find it unnecessary to—and expressly do

3

Based upon the circuit court's order, Pachira was immediately dissociated from the partnership pursuant to West Virginia Code § 47B-7-1 (governing dissociation of partner from partnership). Pachira filed a motion for reconsideration that was denied. Pachira then filed this writ of prohibition, maintaining that the circuit court improperly "squeezed Pachira out of the partnership and [allowed Northeast to] continue to use the Water System partnership for personal gain and to the detriment of both the partnership and its partner" and, further, "deprived [Pachira] of any meaningful opportunity to wind up a partnership's business, account for its assets, and ensure that it received maximum value for its share."

## II.    Standard of Review

The Court has held that "a writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court." Syl. Pt. 2, in part, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).[6] "Prohibition lies only to restrain inferior courts from proceedings in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers, and may not be used as a substitute for [a petition for appeal] or certiorari." Syl. Pt. 3, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996); *see also* W. Va. Code § 53-1-1 ("The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers.").

Further,

> [i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as a direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

---

not—make any findings regarding the existence of a partnership, or the number of partners thereto. *See infra*-discussion.

[6] We have established that extraordinary remedies are reserved for "really extraordinary causes." *State ex rel. Vanderra Res., LLC v. Hummel*, 242 W. Va. 35, 829 S.E.2d 35 (2019) (citing *Am. Elec. Power Co. v. Nibert*, 237 W. Va. 14, 19, 784 S.E.2d 713, 718 (2016) (internal quotations and citations omitted)).

*Hoover*, 199 W. Va. at 14-15, 483 S.E.2d at 14-15, Syl. Pt. 4. With this standard in mind, we turn to Pachira's assertion that a writ of prohibition should issue in the present case.

## III.    Discussion

In its petition for a writ of prohibition[7] Pachira seeks to prohibit the circuit court from enforcing its order of dissociation, which is premised on the court acting in excess of its legitimate authority.[8] We therefore limit our review to the court's authority to order the remedy of dissociation and decline to undertake a review of foundational issues regarding the parties' relationship only tangentially implicated here. Further, while Northeast and NNE Water Systems apparently now take issue with the characterization of their relationship with Pachira as a "partnership," the posture of this case and the order on review requires us to utilize, for purposes of this extraordinary writ, the term "partnership" and review the court's order pursuant to the Act.[9]

Turning now to Pachira's argument, we find that the remedy requested by Pachira—dissolution—and the remedy granted by the court—dissociation—are distinct partnership[10]

---

[7] Pachira's petition is focused upon the circuit court's purported clear legal error in granting relief not requested by any party. Although the parties disagree as to the nature of the error, all of the parties appear to contend that the court's order of dissociation was affected by some degree of legal error. While Pachira argues that the court erred in determining the nature of the partnership and the number of partners, respondents argue that the court improperly determined that a partnership existed in the first instance—an issue not raised in Pachira's petition. We are therefore mindful of the scope of Pachira's requested relief and decline to address issues not properly before the Court.

[8] Pachira asserts that the circuit court abused its authority and clearly erred by 1) improperly granting equitable relief in lieu of its requested statutory right to dissolution under the Act; 2) violating West Virginia law that requires dissolution; and 3) improperly concluding that the partnership consisted of three partners.

[9] Nothing contained in this decision, nor in our prior decision, should be read as this Court deciding, or reaching the issues of the existence or membership of any alleged partnership.

[10] The Act defines a "partnership" as "an association of two or more persons to carry on as co-owners a business for profit formed under section two, article two of this chapter, predecessor law, or comparable law of another jurisdiction and includes, for all purposes of the laws of this state, a registered limited liability partnership." W. Va. Code § 47B-1-1(7); *see also* Syl. Pt. 6, *Valentine v. Sugar Rock, Inc.*, 234 W. Va. 526, 766 S.E.2d 785 (2014) ("Under the Act, a partnership is an association of two or more persons to carry on as co-owners a business for profit, whether or not the persons intend to form a partnership. W. Va. Code §§ 47B-1-1(7) [2003] & 47B-2-2(a) [1995]."). Moreover, "[t]he Revised Uniform Partnership Act is a 'gap filler' in that it only governs partnership affairs when there is no partnership agreement, or to the extent a partnership agreement does not otherwise provide. W. Va. Code § 47B-1-3(a) [1995]." *Valentine*, 234 W. Va. at 527, 766 S.E.2d at 787, Syl. Pt. 7. Accordingly, because there is no partnership agreement between the parties, this Court looks to the Act for guidance to address the remedy ordered by the circuit court.

5

remedies governed by the Act. Pachira asked the court for a judicial determination of dissolution pursuant to West Virginia Code § 47B-8-1(5)(ii). Pachira argues that instead of ruling on its statutory request for dissolution, the circuit court treated Pachira's motion as a motion for dissociation despite the two remedies being "distinct statutory processes triggered by specific conduct" which are governed by different articles of the Act. Although dissociation is not defined by the Act, the Revised Uniform Partnership Act – the model for West Virginia's Act – provides that dissociation "denote[s] the change in the relationship caused by a partner's ceasing to be associated in the carrying on of the business." Rev. Unif. P'ship Act (1997) § 601, 6 U.L.A. Pt. 1 (2001), comment (1).[11] Dissociation will lead to either a buyout or a dissolution and winding up of the partnership. *See* W. Va. Code 47B-6-3(a) ("If a partner's dissociation results in a dissolution and winding up of the partnership business, article eight of this chapter applies; otherwise, article seven of this chapter applies."). Pachira notes that although dissolution operates to bring the partnership to a close, there is not a similar winding up of the partnership required when a partner is dissociated either on its own volition or upon a judicial dissociation. *Compare id.* § 47B-8-2 (providing partnership continues following dissolution only for the purposes of winding up its affairs) *with id.* § 47B-7-1 (providing partnership continues without dissociated partner) and *Id.* § 47B-6-3(a) (providing potential results of a disassociation are dissolution or continuation of partnership). Therefore, Pachira maintains that the court's decision to improvidently dissociate it instead of dissolving the partnership improperly "forced [Pachira] from its seat at the [partnership] table" and divested it of any say in the winding up of the partnership.

It is undisputed that the parties did not seek Pachira's dissociation before the circuit court granted that remedy. Accordingly, Pachira maintains that the court exceeded its legitimate authority when it sua sponte granted relief not requested by any party. Further, Pachira contends that the court erroneously provided an equitable remedy when a legal remedy expressly prescribed by the Act was sought. Based upon our established jurisprudence, we agree that it was improper for the court to convert Pachira's request for dissolution to an order for dissociation—a remedy that was never requested. *Cf.* Syl. Pt. 3, in part, *State ex rel. Nat'l-Union Fire Ins. Co. of Pittsburgh, Pa. v. Hummel*, 243 W. Va. 681, 850 S.E.2d 680 (2020) ("[A]s a general rule, a trial court may not grant summary judgment sua sponte on grounds not requested by the moving party."). Although the motion before the circuit court in this case was not for summary judgment, the proposition in Syllabus Point 3 of *Hummel*, precluding a court's sua sponte grant of summary judgment on different grounds, is nonetheless instructive in these circumstances. *See id.*

We note critically that, in ordering dissociation, the court failed to make a finding of any occurrence that would trigger the dissociation of a partner from a partnership as required by West

---

[11] The Editor's Notes to the Revised Uniform Partnership Act provide that "RUPA dramatically change[d] the law governing partnership breakups and dissolution[]" because "[u]nder RUPA, unlike the UPA, the dissociation of a partner does not necessarily cause a dissolution and winding up of the business of the partnership." Rev. Unif. P'ship Act (1997) § 601, comment 1.

Virginia Code § 47B-6-1(1)-(10)[12] and, therefore, the court's order was fatally deficient. Additionally, although not requested by any party, the court made no findings that would support Pachira's involuntary dissociation or expulsion from the partnership. *See Giles v. Giles Land Co., L.P.*, 279 P.3d 139 (Kan. Ct. App. 2012) (affirming ruling of dissociation based upon an application by another partner that "the partner had engaged in wrongful conduct that adversely and materially affected the partnership business."); *Brennan v. Brennan Assocs.*, 977 A.2d 107 (Conn. 2009) (noting the trial court found "[t]he plaintiff's moral turpitude and criminal fraud, and failure to be honest in court as to the extent of his criminal wrongdoing constitutes conduct relating to the partnership business that makes it not reasonably practicable to carry on the business with the plaintiff.").

We further agree with Pachira that the circuit court's order of dissociation would improperly divest it of any rights it would be entitled to as a partner, assuming the existence of any such partnership.[13] The Legislature has expressly recognized that a partner owes the partnership and the other partners the duty of loyalty and the duty of care. W. Va. Code § 47B-4-4. Additionally, in *Pachira I* we noted:

> The Partnership Act charges a partner with a fiduciary duty of loyalty to the partnership and to other partners. . . . . "The relationship between partners is

---

[12] West Virginia Code § 47B-6-1 provides for the dissociation of a partner upon the happening of certain enumerated occurrences including: (1) partner giving notice of their will to withdraw; (2) an event agreed to in the partnership agreement as causing the partner's dissociation; (3) the expulsion of the partner pursuant to the partnership agreement; (4) partner's expulsion by the unanimous vote of the other partners in specific situations; (5) upon application by the partnership or another partner for a judicial determination of partner's expulsion; (6) where partner is in bankruptcy or has assigned its benefits for the benefit of a creditor; (7) where partner has become incapable to perform its duties because of death or incapacity; (8) distribution of a trust's entire transferable interest in the case of a partner that is a trust or is acting as a partner by virtue of being a trustee of a trust; (9) distribution of an estate's entire transferable interest, in the case of a partner that is an estate or is acting as a partner by virtue of being a personal representative of an estate; and (10) termination of a partner who is not an individual, partnership, corporation, trust or estate.

[13] As noted above, the existence of a partnership is not presently before this Court. Accordingly, we expressly decline to address that issue. Likewise, for the same reason, we decline to opine as to the number of partners. However, we note that the Act provides specific guidance relative to partnerships. *See* W. Va. Code § 47B-5-2 (providing that the "only transferable interest of a partner in the partnership is the partner's share of the profits and losses of the partnership and the partner's right to receive distributions"); *id.* § 47B-5-1 (providing that a partner "has no interest in partnership property which can be transferred, either voluntarily or involuntarily"); *id.* § 47B-5-3(a)(3) (providing that a transfer of partnership interest "[d]oes not, as against the other partners or the partnership, entitle the transferee, during the continuance of the partnership, to participate in the management or conduct of the partnership business, to require access to information concerning partnership transactions, or to inspect or copy the partnership books or records").

fiduciary, and the highest degree of good faith is required." *Barker v. Smith & Barker Oil & Gas Co.*, 170 W. Va. 502, 509, 294 S.E.2d 919, 926 (1982).

*Pachira I*, 243 W. Va. at 369, 844 S.E.2d at 140. The court's decision to immediately dissociate Pachira necessarily terminated any fiduciary rights between the parties and stripped Pachira of rights that it would have been entitled to as a partner in the dissolution of any such partnership. West Virginia Code § 47B-6-3 clearly provides that, immediately upon disassociation, a partner's "right to participate in the management and conduct of the partnership business terminates" along with any fiduciary duties to the dissociated partner. Moreover, the court's error may result in damage to Pachira in a way that is not correctable on appeal, as the deprivation is not solely monetary, and it is difficult to quantify the consequences of a partner not being allowed to participate in the winding up of the partnership.

## IV.    Conclusion

For the reasons stated above, the circuit court exceeded its legitimate powers and committed clear error as a matter of law when it entered its order dissociating Pachira from the purported water system partnership. Accordingly, we grant the requested petition for writ of prohibition, vacate the circuit court's orders dissociating Pachira from the water system association, and remand to the circuit court.

Writ Granted.

**ISSUED:** April 16, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

8